## DIETRICH vs. KOCH and another, impleaded, etc.

COUNTERCLAIM: PLEADING. (1) *Definition of counterclaim.* (2) *The case stated; no counterclaim.* (3) *When demurrer lies to answer setting up counterclaim.* (4) *Whether general demurrer to counterclaim in answer reaches back to complaint.* (5) *Demurrer to same facts, also pleaded as defense, reaches back.*

FRAUD. (6, 7) *Transactions in fraud of creditors held good* inter partes.

DEED OF CONVEYANCE. (8) *Consideration.*

1. A *counterclaim* must be a claim which, if established, will defeat or in some way qualify the judgment to which plaintiff is otherwise entitled.

2. Action by L. D. to have judgments against him in favor of C. D. satisfied of record, upon the ground that such judgments were procured by L. D. himself, with the consent of C. D., for the protection of said L. D. against certain other parties; that before they were obtained, C. D. had agreed with L. D. to give the latter all the interest he had in the subject matter of said judgments; and that subsequently C. D. had conveyed to L. D. certain land, with condition that L. D. should support him, said C. D., for the remainder of his life, and pay him a certain annuity; and that this was designed as a full settlement of all claims which C. D. had against L. D., by virtue of said judgments or otherwise; and that the neglect of C. D., during his lifetime, to satisfy such judgments of record was a mere oversight. Two heirs of C. D. answered; and a certain portion of their answer, which was demurred to, stated, both as a defense and as a counterclaim, certain facts upon which they demanded that the deed from C. D. to L. D. be adjudged void, and that the property described therein be distributed among the heirs of C. D. *Held*, that. this was *not a proper counterclaim* in this action, because the setting aside of such deed will not affect plaintiff's right to the judgment demanded in the complaint.

3. A demurrer lies to an answer setting up facts by way of counterclaim, when it appears on the face of the answer that the facts so alleged do not constitute a proper counterclaim.

4. Whether a general demurrer to a mere counterclaim in the answer will be valid *as a demurrer to the complaint*, if that be insufficient, is not here determined.

5. But where the same facts alleged as ground of counterclaim are also pleaded *as a defense*, a demurrer thereto reaches back to the complaint.

6. Conveyances of property, and other transactions and agreements, made for the purpose of defrauding creditors, are nevertheless binding upon the parties themselves and their personal representatives.

7. In 1856, C. D. and wife conveyed certain lands to L. D. and K., by warranty deed; and, to secure payment of part of the purchase money, the grantees executed to C. D. their bond and a mortgage of the premises for $14,000, payable July 1, 1866, with interest at 12 per cent. Afterwards K. absconded from the United States, being indebted to L. D. in a considerable amount. L. D. then employed attorneys to foreclose said mortgage for the nonpayment of certain installments of interest thereon, "for the sole purpose of clearing said land from the interest of said K. therein, and for the purpose of being able to hold it against any creditor of K. who might attach it or otherwise attempt to satisfy his debt out of it;" and an action of foreclosure was accordingly commenced in the name of C. D. against

L. D. and K., and judgment of foreclosure and sale taken in 1862, for a debt of over $12,000 then due; and the land was bid off at the sale, for $1,000, and judgment for over $11,000 deficiency entered against L. D. and K. While said action was pending, L. D., fearing that some creditor of K., or some person in his behalf, might bid off said land for more than was due on the mortgage, and thus create a surplus, a portion of which would go to K. or his creditors, caused an action to be commenced, in 1863, in the name of C. D., against said L. D. and K., "for the recovery of a sum of money said to have been loaned by C. D. to L. D. and K. before that time," in which action judgment was rendered against the two defendants named, for over $2,300. Both these judgments were entered at the instance and expense of L. D., and for his benefit, to give him a clear title to said real estate, C. D. merely consenting to the use of his name therein. Afterwards the land first named was conveyed to C. D. as purchaser at the foreclosure sale; and by a subsequent arrangement it was reconveyed by him to L. D., upon the conditions named in the conveyance, as a full settlement of all claims and demands between C. D. and L. D. These facts being alleged by L. D. in his action to have the two judgments against him satisfied of record: *Held*, that they do not show any fraud for which the courts should refuse, *in favor of the heirs and personal representatives of C. D.*, to grant the relief demanded in the complaint.

8. Said deed from C. D. to L. D. is alleged to have been given by the grantor "partly for the purpose of providing for his son," said L. D., and partly by way of remunerating L. D. for a farm which he had before conveyed to C. D. without receiving anything therefor, and which C. D. afterwards sold for $6,000; and the deed was "subject to a condition that L. D. should support C. D. during his natural life, and pay him an annuity of $200 per annum." *Held*, that these averments show a sufficient *consideration* to support the deed.

APPEAL from the Circuit Court for *Milwaukee* County.

Action to vacate and discharge certain judgments against the plaintiff, *Louis Dietrich*. The complaint states that in 1856, one Carl Dietrich and his wife conveyed to the plaintiff and one Edward Kunckel, by warranty deed, certain lands described in the complaint, and that, at the same time and for the purpose of securing the payment of a part of the purchase money therefor, the grantees executed to said Carl their bond, and a mortgage on the same premises, conditioned for the pay-

ment of $14,000 in ten years from July 1, 1856, with interest thereon at twelve per cent., payable semi-annually, which deed and mortgage were duly recorded; that afterwards, and prior to the foreclosure of said mortgage, Kunckel became involved in difficulties and debts and absconded from the United States, being indebted to the plaintiff in a considerable amount; that the plaintiff afterwards employed attorneys to foreclose such mortgage for nonpayment of certain installments of interest due thereon, "for the sole purpose of clearing said land of the interest of the said Kunckel therein, and for the purpose of being able to hold it against any creditor of said Kunckel who might attach the same or otherwise attempt to satisfy his debt out of the same;" that an action was thereupon commenced in the circuit court for that purpose, in the name of Carl Dietrich as plaintiff, and against this plaintiff and Kunckel as defendants, and judgment of foreclosure was entered therein in October, 1863, for over $12,000 then unpaid on the bond and mortgage, and for costs; that the mortgaged premises were sold pursuant to such judgment, and the plaintiff caused the land to be bid off in the name of Carl Dietrich for $1,000, although it was then worth at least $15,000, and in February, 1864, procured a confirmation of the sale, and a judgment for deficiency in the usual form to be entered for over $11,000.

The complaint then proceeds as follows: "That while said action was pending, the plaintiff, fearing that some person on behalf of said Kunckel, or some person to whom said Kunckel was indebted, might bid said land off for more than was due on said mortgage, and thus create a surplus, a portion of which would go to said Kunckel or his creditors, caused an action in this court to be commenced by said attorneys, wherein said Carl Dietrich was plaintiff, and said Kunckel and the plaintiff herein were defendants, which action was commenced on the 25th day of July, 1863, for the recovery of a sum of money said to have been loaned by said Carl Dietrich to said Kunckel and the plaintiff before that time; and such proceedings

were afterwards had in said action, that judgment was entered therein in favor of said Carl Dietrich and against said Kunckel and the plaintiff herein, on the 24th day of October, 1863, for $2,313.03 damages, and $36.50 costs, and docketed the same day.

" That both of said judgments were entered at the instance of the plaintiff, and at his expense; that said Carl Dietrich had nothing to do with either of them, further than to consent to the use of his name and to sign the necessary papers, and that said judgments were entered entirely for the benefit of the plaintiff, and to give him a clear title to said real estate, which he then occupied and has ever since occupied and possessed.

" That before said judgments were obtained, the said Carl Dietrich had resolved and promised, and it had been agreed by and between the said Carl Dietrich and the plaintiff, that the said Carl Dietrich should give to the plaintiff all the interest which he, the said Carl Dietrich, had in said land, said mortgage and said loan, partly by way of providing for his son, the plaintiff, and partly by way of remunerating the plaintiff for a farm of forty acres in the town of Lake, in the county of Milwaukee, which the plaintiff had before that time conveyed to said Carl Dietrich without receiving anything in payment therefor, and which the said Carl Dietrich afterwards sold for $6,000. That pursuant to such arrangement, and for the purpose of carrying the same into effect, the plaintiff procured the sheriff of Milwaukee county to execute to said Carl Dietrich a conveyance of said premises as purchaser at said foreclosure sale, which conveyance is in the usual form of such conveyances, is dated the 19th day of December, 1863, and recorded in the office of the said register of deeds, on page — of volume — of the records of deeds in said office.

" That afterwards, to wit, on the 9th day of May, 1870, the plaintiff having been in the meantime in the continued and undisturbed possession of said premises, said Carl Dietrich conveyed said premises to the plaintiff, by his certain warranty

deed of that date, subject to a mortgage for $2,500, and subject to a condition that the plaintiff should support said Carl Dietrich during his natural life, and pay him an annuity of $200 per annum, which deed is recorded in the office of said register of deeds on page 266 of volume 116 of the records of deeds in said office. That said deed was made by way of carrying into effect a full settlement between the plaintiff and said Carl Dietrich of all claims and demands of every nature which *they had or might claim to have*, the one against the other, except the support and annuity provided for in said deed, and it was purely through oversight and neglect that said judgments were not afterwards satisfied of record as to the plaintiff herein.

" That after said deed was executed, the said Carl Dietrich continued to live with the plaintiff on said premises, to the time of his death.

" The plaintiff further shows, upon his information and belief, that said Edward Kunckel departed this life in Germany several years since.

" That said Carl Dietrich departed this life intestate, on the 24th day of May, 1873, and that on the 23d day of June, 1873, the defendant *Samuel Howard* was duly appointed administrator of his estate, and then entered upon, and has ever since continued in, the discharge of the duties of said trust.

" That said administrator has caused execution to be issued upon each of said judgments for the collection thereof, and has caused the sheriff of Milwaukee county to levy upon the property of the plaintiff to satisfy said executions, contrary to equity and good conscience, and in violation of the just rights of the plaintiff in the premises."

The complaint prays that the judgments, executions and levies be vacated and set aside, and for an injunction and general relief. The action was originally commenced against the administrator alone, and the other defendants were subsequently made parties by order of the court.

The defendants *Emilie Koch* and *Bertha Lins* answered jointly, admitting certain allegations not necessary to be stated, and denying all the other allegations contained in the complaint.

The answer then proceeds at great length (and this is the portion demurred to), to state many facts and circumstances upon which is predicated a counterclaim praying that the deed of May 9th, 1870, from Carl Dietrich to his son, the plaintiff, be set aside and adjudged void, and the property therein described distributed among the heirs of Carl Dietrich and his wife, the defendants who answer being two of such heirs. All of the averments of this portion of the answer relate exclusively to such counterclaim. For reasons which appear in the opinion it becomes unnecessary to set out such averments here.

The plaintiff demurred to that portion of the answer described in the last preceding paragraph, on the ground that it did not state facts sufficient to constitute either a defense or a cause of action by way of counterclaim; and the defendants appealed from an order sustaining the demurrer.

*Cotzhausen, Sylvester & Scheiber*, for appellants, argued, *inter alia*, that the arrangement between father and son, so far as it relates to the release of the judgments in question, appears upon the face of the complaint to be a voluntary executory agreement merely, which a court of equity cannot enforce. The court will never lend its aid to enforce the specific execution of contracts which are voluntary, or where no consideration emanates from the party seeking performance, even though they may have the legal consideration of a seal; and this principle applies, whether the contract insisted on be in the form of an agreement, a covenant, or a settlement. Fry on Specific Performance, 25. Natural affection is a moral and meritorious consideration for a promise to make provision for the object of this love, but it is not a valuable consideration, and will not sustain a promise at law. Whether equity differs from law in this respect, cannot be positively determined from

the authorities. The weight of authority in England, and perhaps in this country, is against the sufficiency of these considerations in equity. 2. Again, to entitle a party to come into a court of equity and call for aid, he must come with clean hands, and not be himself in fault. The complaint shows the respondent to be caught in the net-work of his own acts, attempting to defraud and cut off his partner and creditors—a victim of his own folly and fraudulent machinations. Hence he is not entitled to the relief sought by the complaint. 3. To the point that the answer stated a good defense by way of counterclaim, counsel contended that, all parties interested in the land in controversy being before the court, equity should retain jurisdiction to do complete justice, and for a final determination of the rights of the parties. *Akerly v. Vilas*, 15 Wis., 401. Such an answer clearly falls within the definition of a counterclaim as given in the code, being matter arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim, and matter connected with the subject of the action.

*Johnson & Rietbrock*, for respondent.

LYON, J. The plaintiff seeks by this action to procure the discharge of two certain judgments recovered against him in the year 1863, and he states in his complaint the facts which he claims entitle him to relief. The portion of the answer demurred to does not controvert the right of the plaintiff to have the judgments discharged. The allegations thereof relate exclusively to the invalidity of the deed of May 9th, 1870, which is the subject of the counterclaim contained in the answer. This portion of the answer is pleaded both as a defense and a counterclaim, and is demurred to as not stating a defense to the action or a good cause of action by way of counterclaim.

It is very clear that, as distinguished from a counterclaim, the portion of the answer demurred to fails to state facts con-

stituting a defense to the action.   Conceding, for the purposes
of the case, that, were an action brought by the other heirs of
Carl and Margarethe Dietrich against the plaintiff to annul the
deed of May 9, 1870, the facts stated in this answer are suffi-
cient to entitle the plaintiffs in such action to the relief demand-
ed, we are brought to consider whether such cause of action is
a proper counterclaim to this action.   If it is not, the answer
is demurrable; for a demurrer lies to an answer containing a
counterclaim, when it appears upon its face that it does not con-
stitute a counterclaim to the action.   R. S., ch. 125, sec. 16
(Tay. Stats., 1441).

The term *counterclaim*, of itself, imports a claim opposed to,
or which qualifies, or at least in some degree affects, the plaint-
iff's cause of action.   It has been held in New York that a
counterclaim, to be valid, must to some extent impair, affect or
qualify the plaintiff's right to the relief to which he would
otherwise be entitled by his action.   In *Mattoon v. Baker*, 24
How. Pr. R., 329, the court says:   "A counterclaim, to be
available to a party, must afford to him protection in some way
against the plaintiff's demand for judgment, either in whole or
in part.   It must, therefore, consist in a setoff or claim by way
of recoupment, or be in some way connected with the subject
of the action stated in the complaint.   It must present an an-
swer to the plaintiff's demand for relief, must show that he is
not entitled, according to law, or under the application of just
principles of equity, to judgment in his favor, as or to the ex-
tent claimed in the complaint."   (P. 332.)   See also *Pattison v.
Richards*, 22 Barb., 143; and *National Fire Ins. Co. v. McKay*,
21 N. Y., 191.   In the latter case, Judge COMSTOCK uses the
following language:   "I apprehend that a counterclaim, when
established, must in some way qualify, or must defeat, the judg-
ment to which a plaintiff is otherwise entitled."   (P. 196.)
That the New York courts have held correctly on this subject,
we entertain no doubt whatever.

We are unable to perceive that the counterclaim here inter-

posed, if established, can qualify or in any manner affect the plaintiff's cause of action. Should the defendants succeed in proving that the deed of May 9, 1870, ought to be annulled, this fact, of itself, will not affect the plaintiff's cause of action. Upon proper proofs he will still be entitled to have the judgments against him discharged. It necessarily follows that the cause of action stated in the answer is not available to the defendants as a counterclaim to this action. We conclude that the demurrer is well taken, whether the portion of the answer demurred to be regarded as a defense or a counterclaim, and · this renders it unnecessary for us to determine whether, if the allegations of the answer are true, the deed in question ought to be cancelled in some proper proceeding for that purpose.

But, under the familiar rule that a general demurrer to any pleading reaches back in its effect through the whole record and attaches to the first substantial defect in the pleadings, the counsel for the defendants attack the complaint, and they argue that it fails to state facts sufficient to constitute a cause of action. The counsel for the plaintiff contend that the rule does not apply to a demurrer to a counterclaim, and urge some very plausible reasons in support of the position.* Without stating the argument or passing upon the question of the effect of a demurrer to a counterclaim alone, it is sufficient to say that this demurrer is not only to the answer as a counterclaim, but as a *defense* also. It is in the latter particular analogous to a demurrer to a plea in bar under the old practice, which always reached back to the declaration. We must determine, therefore, whether the complaint states a cause of action. If it does not, the demurrer to the answer must be sustained as a demurrer to the complaint. Otherwise it was correctly sustained as a demurrer to the answer.

The principal objections taken to the complaint are, that it appears upon the face thereof, 1. That the plaintiff was guilty

*The argument of plaintiff's counsel on this point is not included in their brief on file.— REP.

of a fraud upon the creditors of his cograntee, Kunckel, in pro curing the judgments in question to be obtained against Kunckel and himself, and perhaps in other transactions. 2. That no consideration was paid by the plaintiff on account of the alleged settlement of the judgments in question, but the same was a mere voluntary settlement without consideration, so far as Carl Dietrich is concerned, and that a court of equity would not enforce the same or any executory agreement relating thereto, against the said Carl, were he living, and will not en- force the same against his heirs and personal representatives.

As to the first of these objections, the legal proposition in- volved in it was ruled adversely to the defendants in *Clemens v. Clemens*, 28 Wis., 637. It was there held that conveyances of property and transactions and agreements between parties, although made for the purpose of defrauding creditors, are, nevertheless, valid and binding upon the parties themselves and their personal representatives. The opinion by Dixon, C. J., contains a most able discussion of the whole subject, including a review of numerous authorities, and is well worthy of a careful perusal. The same doctrine is asserted in *Hardy v. Stonebraker*, 31 Wis., 640. Whatever fraud may appear to have been com- mitted by the plaintiff upon the creditors of Kunckel, the com- plaint does not show that any fraud was committed by the plaintiff upon Carl Dietrich. If no fraud was thus perpetrated upon the latter, his heirs cannot take advantage of an alleged fraud upon strangers to this litigation, to defeat the plaintiff's action.

Neither is the second objection above mentioned well taken. In addition to the consideration of natural love and affection, the complaint alleges valuable considerations paid by the plaintiff on account of the alleged settlement, which includes (as it is averred) the satisfaction of the judgments in question. These are, the conveyance by the plaintiff to Carl Dietrich of the forty acres of land in the town of Lake, and the covenants of the plaintiff, contained in the deed of May 9, 1870, to sup-

port the said Carl and to pay him an annuity of two hundred dollars during his natural life.

We are of the opinion that the complaint states a cause of action within the jurisdiction of a court of equity.

*By the Court.* — The order of the circuit court, sustaining the demurrer to the answer, is affirmed.