Weber and another vs. Weber.

*May 20 — June 20, 1895.*

WEBER and another vs. WEBER (TURNER and others, Appellants: STEARNS and another, Respondents).

*May 20 — June 20, 1895.*

*Debtor and creditor: Equity: Who may attack fraudulent judgments: Partnership: Receivers: Restraining actions against firm: Appealable orders.*

1. Mere creditors at large cannot attack the validity of judgments, executions, and levies against their debtors on the ground that they were procured by collusion and fraud.
2. A receiver appointed in an action between partners to wind up the business of the firm cannot attack, on the ground of fraud, the validity of prior judgments, executions, and levies which are binding on the firm.

3. In such an action an order appointing a receiver and sequestrating the property of the firm also restrained all persons having claims against the partnership from commencing any action against it. *Held*, that this latter part of the order was improvidently granted and was a mere nullity and was therefore not a ground for allowing creditors at large to attack the validity of judgments against the firm.

4. Orders made in such action requiring the sheriff and the attorneys for the judgment creditors to pay into court the proceeds of the execution sales of the property of the firm, were appealable.

APPEALS from orders of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

From January 27, 1893, to September 5, 1894, the plaintiffs, Gershom and David Weber, and the defendant, A. M. Weber, were copartners, and extensively engaged in carrying on a general merchandise business at Milwaukee and Oshkosh, under the firm names of Weber Bros. and Weber Dry Goods Company.   On September 5, 1894, the said firm confessed five several judgments, in the aggregate amount of $93,595.93.   Said several judgments were so confessed, entered, and docketed at very nearly the same time, and all within a period of ten minutes, as follows: $8,245.90, in favor of Inbusch, upon a note dated May 23, 1894; . $31,556.37, in favor of H. B..Claflin Company, upon a note dated June 21, 1894; $15,189.55, in favor of Hammel, upon a note dated July 31, 1894; $20,207.06, in favor of Karger, on a note dated July 31, 1894; $18,397.05, in favor of Wright, on a note dated September 4, 1894.   Immediately upon the docketing of said several judgments, executions were issued thereon, and each was levied upon the goods of said firm very nearly at the same time, and within a period of five minutes.   Said several judgments were all so entered and docketed, and said executions were all so issued and levied, between twelve o'clock noon and ten minutes thereafter.

Thereupon the plaintiffs, Gershom and David Weber,

commenced this action against the defendant, A. M. Weber, for a dissolution of said firm and the appointment of a receiver with the usual powers and duties, by reason of said levies and the inability of said firm to pay their debts. The summons and complaint therefor were immediately served, and the defendant immediately answered, and admitted all the allegations of the complaint, and consented therein to the judgment prayed in the complaint, and therein waived notice of application for the appointment of a receiver. Thereupon the superior court ordered and adjudged, in effect, that said copartnership be dissolved, and the assets and property thereof sequestered, and a receiver be appointed, with the usual powers and duties and upon the usual conditions; and said order appointing said receiver contained, among other things, the following clause, to wit: "It is further ordered and adjudged that all persons having claims or demands against the said copartnership be, and they hereby are, restrained from commencing any action against the said copartnership." Thereupon the receiver immediately filed his bond, and qualified as such receiver before 1 o'clock of September 5, 1894. Soon after, certain parties commenced actions of replevin for certain of the goods so levied upon.

On September 24, 1894, the firm of *Stearns & Spingarn*, of New York, upon their verified petition, alleging in effect that they were creditors at large of Weber Bros. for a large amount, and that each and all of said several judgments (except that of H. B. Claflin Company) were without consideration and obtained by collusion and conspiracy and to give a fraudulent and unlawful preference, obtained an order to show cause why they should not be permitted to intervene in said proceedings and in said several actions in which judgments had been so confessed, and become parties thereto. Upon the hearing of that application, and September 25, 1894, it was by the said court ordered: First. That the petitioners above named have leave to intervene in the

above-entitled action, and also in each of the actions speci-
fied in said petition wherein judgments have been entered
as therein alleged, and to file in each of the last-described
actions a petition containing the allegations upon which said
petitioners assail said judgments; that such petition may be
therein filed within twenty days from date, and that twenty
days after such filing shall be allowed to each judgment
creditor to answer thereto; said petition to be served on
*Messrs. Turner, Bloodgood & Kemper,* attorneys for said
judgment creditors, and the answers to be served on B. M.
Goldberg, attorney for said petitioners, and the issues
thereby formed to stand for trial. Second. "It is hereby
further ordered that the sheriff of Milwaukee county require
each and every bid accepted by him on the sale of the stock
of Weber Brothers to be paid in cash, and that he shall pay
the amount for which such stock shall be sold to the clerk
of the above-named court to abide the result of the trial of
the issues above described."

Upon due application made, that order was modified by
an order made September 29, 1894, which, among other
things, contained a recital and order as follows: "Whereas,
the court is of the opinion that $7,000 deposited in court
will protect the said *Stearns & Spingarn* upon the said claim,
and the judgment creditors having applied to have said
order of September 25th modified, it is ordered that said
order of September 25th be modified so as to require the
said sheriff to pay into court, out of the proceeds of said
sale, the sum of $7,000, the excess over said sum of $7,000
to be applied by the said sheriff pursuant to the require-
ments of the writs in his hands; any surplus realized upon
said sale over the amount due upon said executions to be
turned over by said sheriff to the receiver heretofore ap-
pointed herein."

On September 29, 1894, the sheriff, by virtue of said
several execution levies, sold the goods so levied upon for

$67,550. Out of the same he retained $3,000 for his fees and expenses thereon. *Stearns & Spingarn* thereupon moved the court that the balance of said sum, to wit, $64,550, should be paid into court in conformity to the order of September 25, 1894. Upon the hearing of that application, it was by the court, October 11, 1894, ordered, in effect, that said motion be, and the same was thereby, granted; that said sheriff be, and he thereby was, commanded and directed to forthwith pay into court the sum of $7,000 in his hands; that said sheriff and *Turner, Bloodgood & Kemper* and Inbusch be, and thereby were, commanded and directed forthwith to pay and deposit with the clerk of said court the sum of $8,280.25, so as aforesaid applied upon the execution in favor of said Inbusch; that said sheriff, said H. B. Claflin Company, and *Turner, Bloodgood & Kemper*, its attorneys, were thereby commanded and directed forthwith to pay and deposit with the clerk the sum of $31,687.92, so as aforesaid applied on the execution in its favor; that said sheriff, said Hammel, and *Turner, Bloodgood & Kemper*, his attorneys, be, and they thereby were, commanded and directed to forthwith pay and deposit with the clerk of said court $15,223.05, the amount applied upon the execution in favor of said Hammel as aforesaid; that said sheriff, said Karger, and *Turner, Bloodgood & Kemper*, his attorneys, be, and they were thereby, commanded and directed forthwith to pay and deposit with the clerk of said court $2,358.78, the amount so as aforesaid applied on the execution in favor of said Karger; that all of said sums, when so paid and deposited with said clerk, should there remain until the further order and direction of the court upon notice to each and all of the parties interested in each and all of said actions; that said alleged modified order of September 29, 1894, was and is wholly inoperative and of no effect whatsoever; and that said former order of September 25, 1894, be, and the same was thereby, declared and adjudged to have been since the

making thereof, and still to be, of full force and virtue, and said sheriff, and the said Weber Bros., and the said receiver, and each and all of the said plaintiffs in the other five actions mentioned, and their respective attorneys, be, and they thereby were, commanded and required to comply with said order of September 25, 1894, to all intents and purposes the same as if the order of September 29, 1894, had never been made. That order and the order of September 25, 1894, were each entitled in this action, and also in each of the actions in which judgment was so confessed. The order of September 29, 1894, was entitled only in this action.

On October 24, 1894, the said sheriff, by his attorneys, served due notice, entitled in this action and also in each of the actions in which judgments were so confessed, whereby he appealed to this court from so much of the order of September 25, 1894, as constituted the second part thereof as mentioned above; and also from so much of the order of October 11, 1894, as in any way affected the rights and duties of said sheriff as such officer or individually; and from so much of said order as required him to pay into court the sum of $7,000 in his hands; and from so much of said order as determined that the modified order of September 29, 1894, was and is wholly inoperative and of no effect whatever, and that the order of September 25, 1894, be, and the same was thereby, declared and adjudged to have been since the making thereof, and still to be, of full force and virtue, and that said sheriff be, and he thereby was, commanded and required to comply with said order of September 25, 1894, to all intents and purposes the same as if the order of September 29, 1894, had never been made. On October 24, 1894, the said *Turner, Bloodgood & Kemper*, in person, served due notice, entitled in this action and also in each of the actions in which judgments were so confessed, whereby they appealed to this court from so much of the order of October 11, 1894, as in any way affected them, and

particularly from that part of said order requiring them to pay and deposit with the clerk of said court the sums, respectively, of $8,280.25, $31,687.92, $15,223.05, and $2,358.78.

For the appellants there were briefs by *Turner, Bloodgood & Kemper*, in person and as attorneys for the sheriff, and a separate brief signed also by *Charles Quarles*, of counsel; and the cause was argued orally by *Mr. W. J. Turner* and *Mr. Quarles*. To the point that, this being an action to wind up a partnership and distribute its assets to creditors and between the partners, the receiver appointed therein cannot attack the validity of the judgments of the execution creditors, they cited *Walsh v. St. P. S. F. Co.* 62 N. W. Rep. 383, and cases cited; *Berlin M. Works v. Security T. Co.* 61 id. 1131; *Pease v. Landauer*, 63 Wis. 20; *King v. Cutts*, 24 id. 627; High, Receivers, § 495; *Mechanics' Nat. Bank v. Laudauer*, 68 Wis. 44; *Devlin v. New York*, 4 Misc. Rep. 106; *Felter v. Maddock*, 11 id. 297; 5 Wait, Act. & Def. 379, 389; *Hoffman v. Schoyer*, 28 N. E. Rep. 823.

For the respondents there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas* and *Goldberg & Hoxie*, and oral argument by *J. G. Flanders* and *C. E. Wilde*.

CASSODAY, J. The circumstances under which the several judgments were confessed, entered, and docketed, and the several executions issued and levied, and this action commenced, and the receiver appointed and qualified, were well calculated to invite thorough judicial investigation. Assuming that such judgments, executions, and levies were the result of collusive and fraudulent purposes of giving and obtaining unlawful preferences and to defraud other creditors, still the questions recur whether the receiver, or *Stearns & Spingarn* as mere creditors at large, were in a position to successfully invoke the equity powers of the trial court to set aside such judgments, executions, and levies, in whole or in part. The statute prescribes five classes of cases in

each of which a receiver may be appointed. R. S. sec. 2787. The case at bar falls within none of these classes, except the fifth, which provides, in effect, that "a receiver may be appointed . . . in such cases as are now provided by law, or may be in accordance with the existing practice, except as otherwise provided" in the statutes. So the statutes and rules of court provide for actions and supplementary proceedings by judgment creditors who have had executions returned unsatisfied, in whole or in part, and for the appointment of receivers therein. R. S. secs. 3029, 3035, 3036; Circuit Court Rule XXVIII, secs. 1–7; *Schuerman v. Matthews,* 78 Wis. 309; *Holton v. Burton,* 78 Wis. 321.

Where a receiver is appointed in such an action or proceeding, he may, as the representative of such judgment creditor or creditors, successfully invoke the equity powers of a court in setting aside fraudulent transfers previously made by such judgment debtor. But here the receiver was not appointed in any such action or proceeding, and there is no claim that he represents any such judgment creditor. He was appointed in a suit by two of the partners of an insolvent firm against the other partner for the ostensible purpose of winding up the business of the firm. By such appointment he succeeded to all rights of action belonging to the firm, and occupies, in general, substantially the same relation to the creditors of the firm and those claiming liens upon firm property which was previously occupied by the firm. 20 Am. & Eng. Ency. of Law, 235; Beach, Receivers, § 576; High, Receivers, § 495. The judgments, executions, and levies were certainly binding as against Weber Bros. *Clemens v. Clemens,* 28 Wis. 637; *Dietrich v. Koch,* 35 Wis. 618; *Davy v. Kelley,* 66 Wis. 452. Upon the principle already stated, the same is true as against the receiver in this action. But the receiver was not a necessary party to a suit or proceeding by other creditors than those having such judgments, to set aside the levies made before his appoint-

ment, or to establish their superior right to assets or funds in his hands. *Mechanics' Nat. Bank v. Landauer*, 68 Wis. 44. But *Stearns & Spingarn*, being mere creditors at large, were in no position to attack the validity of those judgments, executions, and levies on the ground that they were procured by collusion and fraud. *Gregory v. Rosenkrans*, 78 Wis. 454; *Ullman v. Duncan*, 78 Wis. 213; *Manson v. Phœnix Ins. Co.* 64 Wis. 26. Such an attack could only be successfully made by them or such other creditors in aid of some lien or right acquired at law, or after their legal remedies had been exhausted. *Nassauer v. Techner*, 65 Wis. 388; *Meissner v. Meissner*, 68 Wis. 336; *Ahlhauser v. Doud*, 74 Wis. 400; *Gilbert v. Stockman*, 81 Wis. 602; *North Hudson B. & L. Asso. v. Childs*, 86 Wis. 295. In other words, a court of equity will not interfere in aid of creditors who have not reduced their claims to judgment nor acquired any lien upon the debtor's property. 20 Am. & Eng. Ency. of Law, 311.

But counsel seek a departure from these well-established rules of law, on the ground that the trial court, by the order of September 5, 1894, appointing a receiver and sequestrating the property of the firm, expressly restrained "all persons having claims or demands against the said partnership . . . from commencing any action against said copartnership." That portion of that order was certainly improvidently granted, and must be regarded as a nullity. It tends to support the argument of counsel that the judgments, executions, and levies mentioned were procured by collusion with the debtors and for unlawful purposes. But, however strong may be our suspicions in that direction, we must, nevertheless, declare the law as it is, leaving creditors at large to such remedies as they may be advised. Certainly, the trial court could not, by such order, bar *Stearns & Spingarn*, or any other creditors at large, from commencing and maintaining a personal action against Weber Bros., nor

from obtaining a personal judgment against them and issuing execution thereon. Had they done so, and then, in an appropriate manner, filed a bill in equity in aid of such execution or some equitable levy, a different question would have been presented. Counsel invokes the doctrine that, where a party has a clear equitable right, a court of equity may invent an appropriate remedy. The insurmountable difficulty of doing so in the case at bar is the failure of *Stearns & Spingarn* to put themselves in a position to maintain such right in a court of equity.

The orders mentioned are appealable. R. S. sec. 3069. They affect the sheriff individually and as the representative of the parties named; and the attorneys represent their clients as well as themselves.

*By the Court.*— The several portions of the orders of the superior court of Milwaukee county of September 25, 1894, and October 11, 1894, which are appealed from, are reversed, and the cause is remanded for further proceedings according to law.