## In re STANDARD TELEPHONE & ELECTRIC CO.

(District Court, E. D. Wisconsin. September 22, 1907.)

1. CHATTEL MORTGAGES—VALIDITY—RETENTION BY MORTGAGOR OF POWER OF SALE.

Under the law of Wisconsin, as settled by decision, a chattel mortgage which upon its face stipulates that the mortgagor may retain possession of the mortgaged property, sell and dispose of the same in the usual course of business, and appropriate any part of the proceeds to his own use and benefit, is fraudulent and void as to creditors, regardless of any question of intent or the good faith of the parties, its necessary effect being to hinder and delay general creditors of the mortgagor; and for still stronger reason a mortgage is void, which by its terms authorizes the mortgagee to waive payments required thereby and permits the mortgagor in such case to use the proceeds of sales which would otherwise be applied to a reduction of the debt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Chattel Mortgages, §§ 393–401.]

**2. SAME—FRAUDULENT MORTGAGE—RIGHTS OF GENERAL CREDITORS.**

While, under the law of Wisconsin a general creditor cannot attack the validity of a chattel mortgage by an independent action in equity, but must first exhaust his legal remedies, yet, under the decisions of the Supreme Court of the state where such creditors are prevented from prosecuting such remedies by a general assignment or by bankruptcy proceedings, the assignee or trustee in bankruptcy may attack such a mortgage in their behalf; and especially may this be done where the property has passed into the custody of the court, and the mortgagee comes into such court for the purpose of enforcing his lien.

**3. BANKRUPTCY—PROCEEDING TO ENFORCE CHATTEL MORTGAGE—DEFENSE BY TRUSTEE.**

The property of a bankrupt corporation in Wisconsin consisted chiefly of stock in trade, upon which there was a chattel mortgage to a trustee securing an issue of bonds. Such mortgage provided that the corporation might sell the property in the usual course of business, and use the proceeds, provided that it should pay no dividends on its stock until it had paid the interest due on its bonds, and set aside a certain sum each quarter for a sinking fund. It also provided that the trustee might waive any such sinking fund payment for any quarter. By consent the property was sold by the trustee in bankruptcy, free of incumbrance, and the mortgage trustee filed his petition in the bankruptcy court for the enforcement of his mortgage lien against the proceeds. *Held*, that such mortgage was fraudulent and void under the law of the state, and could be successfully attacked by the trustee in bankruptcy, although he represented only general creditors.

**4. JURY—WAIVER OF—RIGHT TO JURY TRIAL.**

A chattel mortgage creditor of a bankrupt, who consents to the sale of the property by the trustee in bankruptcy, and files his petition in the bankruptcy court to establish his lien on the proceeds, cannot demand a jury trial.

In Bankruptcy.   On review of decision of referee.

This is a proceeding to review the findings and final order of John S. Maxwell, Esq., referee in bankruptcy, in the matter of the intervention of K. K. Knapp. The entire property of the bankrupt was by it turned over to the receiver, and subsequently to the trustee in bankruptcy, who retained possession of the same until such property was sold free and clear of incumbrances, under an agreement with mortgagee that proceeds should stand in place of property, for the purposes of determining the rights and equities of the parties. The bankrupt, a Wisconsin corporation, under its articles of association, was impowered to manufacture and sell all appliances and apparatus suitable for telephone purposes, and to operate telephone lines and exchanges, and to conduct the business of telephoning in any way. It had established and was, at the time of the adjudication, operating one small telephone exchange at the village of Sheridan, Wis., but its principal business was manufacturing and selling apparatus. Aside from such small telephone exchange, the assets of said bankrupt consisted of a stock in trade and trade fixtures at Milwaukee, Wis., where it had carried on its manufacturing business. One K. K. Knapp, as trustee under certain bonds secured by chattel mortgage upon such stock in trade, etc., intervened and filed a petition in this court, wherein he claimed a first lien by virtue of certain chattel mortgages, executed by the bankrupt to him as trustee to secure certain bonds, praying that the trustee in bankruptcy be required to answer his petition, and that the mortgage be decreed to be a first lien to be first satisfied out of the proceeds of the sale of assets. Thereupon the trustee in bankruptcy, by his answer to the petition, assailed the validity of the mortgage upon three grounds, viz.: First, that the chattel mortgage is fraudulent and void as to creditors, because of the express agreement contained therein that the mortgagor should remain in possession, continue the conduct of the business and sale of the mortgaged property, and apply the proceeds to its own use; second, that the mortgage is void as to after-acquired property; third, that the mortgage is void as to

general creditors, and the trustee in bankruptcy, because of the failure to file the affidavit of renewal required by the Wisconsin statutes. No issue of fact was developed by the proof, and the case must be ruled by the application of legal principles.

It appeared that the trustee in bankruptcy represented only general creditors; that the mortgage was not renewed at the expiration of two years, as required by sections 2315, 2316 of the Revised Statutes of 1898 of Wisconsin; and that no statement in writing was filed of the amount of sales, etc., as required by section 2316b of the Revised Statutes of 1898; that ever since the execution of the chattel mortgage the bankrupt company, in the course of its business, made sales from the mortgaged property and applied the proceeds to its own use; and that said property was at all times in the possession of the mortgagor. The referee finds that said K. K. Knapp at all times knew that the business was being so transacted, and that it was at all times contemplated and understood by and between said parties that the business should be so transacted, and sales of the mortgaged property so made, and the proceeds so applied to its own use. As conclusion of law the referee found that the mortgage was fraudulent and void as to the creditors of the bankrupt, and dismissed the petition. It appears that the original chattel mortgage was supplemented by a new mortgage for the purpose of extending time of payment of bonds, but for the purposes of this discussion it may be treated as a single document. The bank of Wisconsin, a simple creditor, asked to intervene, and the bankrupt also answered the petition, both setting up substantially the same defenses as were interposed by the trustee.

The ruling of the referee was largely based on the following provisions of the chattel mortgage: "Nothing herein contained shall be construed to prevent said first party from carrying on in the due and regular course its said business, and collecting the indebtedness and moneys due or to become due therein, and applying the same to its own use except as hereinafter provided. Said first party further agrees that no dividend shall be declared or paid on its capital stock at any time when any portion of said sinking fund or the interest on said bonds shall not have been duly provided for according to the terms of this indenture."

It is further provided that upon application of the first party the trustee (Knapp) may waive the payment of said sinking fund for any quarter, and in the event of said trustee electing not to require such payment for such sinking fund the moneys which would otherwise have been placed therein shall remain at the disposition of said first party, to be divided as dividends, or to enlarge, extend, improve, and repair such business, etc. No fraud in fact was imputed to the bankrupt company, or to Knapp, the trustee, or to the bondholders. The bonds were executed and delivered for a valuable consideration. Said mortgage provides for a sinking fund of $500 quarterly, $2,000 annually, out of the net proceeds, or, if necessary, out of general resources, and it was stipulated that no dividend should be declared or paid on capital stock, when any portion of said sinking fund, or the interest on said bonds, should not have been duly provided for.

The following are the sections of the Wisconsin statutes to which reference will be made:

"Section 2310. Every sale made by a vendor, of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor or the creditors of the person making such assignment or subsequent purchasers in good faith; and shall be conclusive evidence of fraud unless it shall be made to appear on the part of the persons claiming under such sale or assignment that the same was made in good faith and without any intent to defraud such creditors or purchasers."

"Section 2313. No mortgage of personal property shall be valid against any other person than the parties thereto unless the possession of the mortgaged property be delivered to and retained by the mortgagee or unless the mortgage or copy thereof be filed as provided in the next section, except when otherwise directed in these statutes," etc.

"Section 2315. Every such mortgage shall cease to be valid, as against the creditors of the person making the same or subsequent purchasers or mortgagees in good faith, after the expiration of two years from the filing of the same or a copy thereof unless within thirty days next preceding the expiration of the two years the mortgagee, his agent or attorney shall make and annex to the instrument or copy on file an affidavit setting forth the interest which the mortgagee has by virtue of such mortgage in the property therein mentioned, upon which affidavit the clerk shall indorse the time when the same was filed."

Section 2316b provides in substance that every mortgagor of any stock of goods, etc., of which he is in possession, and from which he is permitted to make sales and apply proceeds upon the debt, shall file a statement showing amount of sales, amount applied on mortgage, and amount of new stock bought, etc., every 60 days, and upon failure to file such statement the debt shall become immediately due, and after 15 days the mortgage shall cease to be a lien except as between the parties.

Miller, Mack & Fairchild, for the trustee.

Knapp, Haynie & Campbell (Mr. Breeden, of counsel), for K. K. Knapp, trustee.

Vilas, Vilas & Freeman, for Bank of Wisconsin.

Spence & Marshutz, for the bankrupt.

QUARLES, District Judge (after stating the facts as above). The question of law arising in this case involves the construction of a Wisconsin statute. It is therefore a local question, as the federal court in such a case adopts the ruling of the highest judicial tribunal of the state. This proposition is so familiar as to require the citation of no authorities. The Wisconsin Supreme Court has consistently held that a chattel mortgage, which upon its face stipulates that the mortgagor may retain possession of the mortgaged property, sell and dispose of the same in the usual course of business, and appropriate any part of such proceeds to his own use and benefit, is fraudulent and void as to creditors. Place v. Langworthy, 13 Wis. 629, 80 Am. Dec. 758; Steinart v. Deuster, 23 Wis. 136; Blakeslee v. Rossman, 43 Wis. 116; Anderson v. Patterson, 64 Wis. 557, 25 N. W. 541; Bank v. Lovejoy, 84 Wis. 611, 55 N. W. 108; Bank of Kaukauna v. Joannes, 98 Wis. 328, 73 N. W. 997; Franzke v. Hitchon, 105 Wis. 13, 80 N. W. 931; Durr v. Wildish, 108 Wis. 401, 84 N. W. 437. Under these cases it is not a question of intent, because such an arrangement necessarily tends to hinder, delay, and defraud creditors.

The mischief that called forth this stringent doctrine was the hardship imposed upon the general creditor who found between him and his debtor a chattel mortgage on a stock of goods which allowed the mortgagor to retain possession, and to appropriate to his own use, the avails of the business, while such creditor was remediless. As against such creditor, such a mortgage under Wisconsin decisions is void as matter of law without regard to the question of the intention of the parties to the mortgage. The mortgage in suit expressly allows the mortgagor the privilege of disposing of the avails of the business to its own uses and purposes, provided only: (a) The interest on the bond is paid; (b) the sinking fund, amounting to $500 per quarter, or $2,000 per annum, is provided for. Beyond this the power of sale and appropriation is unrestrained.

But the mortgage under consideration contains another more obnoxious provision. By express terms it is stipulated that if and when the mortgagee shall consent to waive the requirements as to the sinking fund, then and in that case the mortgagor is simply required to keep up the interest on the bonds, and is at liberty to apply all the balance of the proceeds of the business to its own uses and purposes. Thus a secret agreement between the parties may result in continuing the lien of the mortgagee indefinitely, and furnish a cover to protect the mortgagor from attacks of creditors while using the proceeds of the business as though the same were unincumbered. It would require ingenuity to devise a scheme more obnoxious to the established law of Wisconsin. It is what Mr. J. Pinney describes as "an apt and ready device." Bank v. Lovejoy, supra.

It is true, as contended upon the argument, that there is no evidence reflecting upon the actual good faith of any of the parties to the transaction; but under the Wisconsin law this is an immaterial circumstance. As Mr. Justice Ryan said in his opinion in Blakeslee v. Rossman, supra: "But intent, bona fide or mala fide, is immaterial to an instrument per se fraudulent in law. The fraud which the law imputes to it is conclusive." The practical effect of this stringent rule was to invalidate every chattel mortgage covering stock in trade, unless the entire proceeds of sales were applied upon the mortgage. The Legislature therefore saw fit to relax the rule by enactment of section 2316b, which requires frequent statements to be filed by the mortgagor, showing amount of sales and disposition of proceeds, etc. This provision does not avail the intervener, because there was no compliance with its terms.

It is true, as contended by the intervener, that in Wisconsin general creditors cannot attack the validity of judgments or levies for collusion or fraud, but must first exhaust their legal remedies. Gilbert v. Stockman, 81 Wis. 602, 51 N. W. 1076, 52 N. W. 1045, 29 Am. St. Rep. 922; Weber v. Weber, 90 Wis. 467, 63 N. W. 757. It is also true that the only effect of a failure to file the affidavit of renewal required by section 2315, Rev. St. 1898, is to render a chattel mortgage invalid as against subsequent purchasers or mortgagees in good faith, or creditors who thereafter acquire liens on the property. Lowe v. Wing, 56 Wis. 31, 13 N. W. 892; Ullman v. Duncan, 78 Wis. 213, 47 N. W. 266, 9 L. R. A. 683; French Lumbering Co. v. Theriault, 107 Wis. 627, 83 N. W. 927, 51 L. R. A. 910, 81 Am. St. Rep. 856. But we are not considering the construction of that section. The vice in the chattel mortgage which we are considering vitiates it as to simple creditors, and is thus distinguished from the other alleged imfirmities arising under sections 2315 and 2316. Russell v. St. Mart., 180 N. Y. 355, 73 N. E. 31; Re Antigo Screen Door Co., 123 Fed. 249, 59 C. C. A. 248; Security Warehousing Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117. The only impediment in the way of the simple creditor is that under the rules of practice he cannot attack the mortgage by an independent action in equity. The Supreme Court of Wisconsin has, however, several times held that such a contest may be waged by an assignee representing general creditors under the said assignment laws, upon the theory that his powers were substantially the same as a trus-

-tee in bankruptcy, or a sheriff armed with an execution. Batten v. Smith, 62 Wis. 92, 98, 22 N. W. 342; Sheldon Co. v. Mayers, 81 Wis. 627, 51 N. W. 1082; Valley Lumber Co. v. Hogan, 85 Wis. 366, 55 N. W. 415; Re Ellis, 97 Wis. 92, 72 N. W. 387. Formerly the assignee under the voluntary assignment statute represented the assignor only, but by chapter 207, p. 255, Laws 1901, he is authorized to represent creditors, and may sue to set aside any fraudulent conveyance where the creditors might have proceeded if no assignment had been made. This is in substance and effect the same authority with which the trustee is clothed under sections 60b and 70e and other provisions of the present bankruptcy act, Act July 1, 1898, c. 541, 30 Stat. 562, 566 [U. S. Comp. St. 1901, pp. 3445, 3452].

It is also true that the effect of the filing of a petition in bankruptcy, as laid down in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, has been modified by the Supreme Court in York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, so that the institution of bankruptcy proceedings no longer has the effect of an attachment or an injunction; but the Supreme Court of Wisconsin has squarely decided in Mueller v. Bruss, 112 Wis. 406, 410, 88 N. W. 229, that a trustee in bankruptcy under the present act, representing only creditors at large, may maintain an action in equity to set aside transfers of property by the bankrupt in fraud of creditors. This is put upon the ground that the bankruptcy act renders it practically impossible for creditors to comply with the equitable rule, and that equity does not demand impossibilities. Jackman v. Bank, 125 Wis. 476, 104 N. W. 98.

Thus it appears that the general doctrine of equity that to institute such a suit a creditor must be armed with a judgment and execution is observed in Wisconsin, but that such rule is one of procedure only, and not a condition precedent. The same doctrine is held in Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885. This authority is the more persuasive because Wisconsin borrowed its statute from New York. The Wisconsin law in favor of simple creditors commends itself to me on stronger grounds than mere comity. It is in harmony with the spirit of the bankruptcy law.

This is not a plenary suit to recover assets. The property in controversy is in the custody of the court. The mortgagee, who was never in possession, intervenes, as he lawfully may do, asserting his claim by virtue of the mortgage, and asking that the trustee may be required to answer his petition. Consent is given to the sale of the property by the trustee, upon condition that the proceeds stand in lieu of the original property. The trustee in his answer asserts that the mortgage is fraudulent and void as to creditors under the Wisconsin law. Therefore we have here a controversy as to the status of property which is in the custody of the court. By section 2, subd. 7, Bankr. Act of July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421], the court is required to determine all controversies so arising. Collier's Bankruptcy (6th Ed.) p. 28; Re Antigo Screen Door Co., 123 Fed. 253, 59 C. C. A. 248; Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 49 L. Ed. 1157.

Section 67a provides that claims which for want of record, or for other reasons, would not have been valid liens as against the claims of creditors of the bankrupt, shall not be liens against his estate.

Section 67b reads as follows:

"Whenever a creditor is prevented from enforcing his rights as against a lien created, or attempted to be created by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankrupt shall be subrogated to and may enforce such rights of such creditor for the benefit of the estate."

By section 67e it is made the duty of the trustee to recover or reclaim the property by legal proceedings or otherwise for the benefit of the estate.

Under these circumstances the conclusion is irresistible, first, that the trustee is fully equipped to make a defense in behalf of simple creditors, which they could not make for themselves; and, second, that it becomes a mere matter of administration for the court to proceed and determine this controversy according to the local law. Re Antigo Screen Door Co., 123 Fed. 251, 59 C. C. A. 248; Re Pekin Plow Co., 112 Fed. 308, 50 C. C. A. 257; Re Andrae (D. C.) 117 Fed. 561, 564. Under these circumstances the contention of the intervener is hostile to the letter and spirit of the bankruptcy act. A claim has the same intrinsic merit before as after judgment. The judgment creditor here takes his place as an unsecured creditor, without superior privilege or advantage. The theory of the bankrupt act is that "equality is equity." What sanction can be found in this act for allowing judgment creditors, if there were such, to share the proceeds of a fraudulent mortgage, and deny participation to the general creditors? If the mortgaged property constitutes assets of the estate, it must be equally distributed. To hold that the entire body of the estate—as would be the case here—should be handed over to a mortgagee whose lien is fraudulent as to creditors, on the ground that the claims proven in the estate have never been merged in judgments, would do violence to the spirit and genius of the bankruptcy act. Under the peculiar circumstances of this case there is no room for this contention of the intervener. In re Blake, 150 Fed. 280, 80 C. C. A. 167; In re Ducker, 134 Fed. 43, 47, 67 C. C. A. 117. I do not deem it necessary to discuss the other alleged infirmities of this chattel mortgage.

It is strenuously urged by the intervener that the bankrupt corporation finds the laws of its being in chapter 86 of the Revised Statutes of 1898 of Wisconsin under which it was incorporated; that to deny it the power and attributes thereby conferred is to preclude its existence as a going concern; that therefore the statutory provisions which we have been considering are not applicable. I have carefully examined all the sections of chapter 86 which have been cited. While some of these provisions may affect the right to hypothecate after-acquired property, I can find nothing which relieves a corporation from the operation of the general law applicable to a fraudulent chattel mortgage upon a stock in trade. It would be a strange oversight if the Legislature of Wisconsin has allowed one of its corporate creatures to defeat the general policy of the state in such an important particular.

With apparent sincerity the intervener complains that he has been

deprived of the benefit of a jury trial, to which he claims to be entitled in every case presenting an issue of fraud. The answer to this contention is that the intervener has voluntarily sought a forum where the procedure of equity obtains. If he desired a jury trial, he should have invited the trustee to some common-law court, either state or federal, both of which were open to him. By his election he must be held to have waived a jury. Dokken v. Page, 147 Fed. 439, 77 C. C. A. 674, and cases cited. For these reasons, the findings and order of the referee are affirmed, and the record will be returned to the referee, for further proceedings in accordance with this opinion.