Anderson and others vs. Patterson.

ANDERSON and others, Appellants, vs. PATTERSON, Respondent.

*November 6 — December 1, 1885.*

*Attachment: Fraudulent conveyance: Chattel mortgage.*

A chattel mortgage given with the understanding, express or implied, that the mortgagor shall go on selling the property in the usual course of trade and applying the proceeds to his own use, is fraudulent as to his other creditors, and is ground for an attachment.

APPEAL from the Circuit Court for *Monroe* County.

The plaintiffs, who are partners, sued out a writ of attachment on a demand against the defendant, and caused his goods to be seized by virtue thereof. The affidavit annexed to the writ alleged, as grounds for the attachment, that the defendant had made a fraudulent disposition of his property, and that he fraudulently contracted the debt sued for. The defendant duly traversed such affidavit, and a trial of the issue resulted in a finding against the plaintiffs as to both of the alleged grounds, and an order dissolving the attachment was accordingly made. The plaintiffs appeal from such order. The testimony is sufficiently stated in the opinion.

The cause was submitted for the appellants on briefs by *Proctor & Tollefson*, attorneys, and *Cameron, Losey & Bunn*, of counsel, and for the respondent on the brief of *Dickinson & Graham*.

LYON, J. From some time in the year 1881 until January, 1885, when the attachment herein was issued, the defendant was a retail dealer in general merchandise at Melvina, in Monroe county. In March, 1882, he borrowed $200 of one Steele, and one Hunt became surety for the payment thereof. The debt to Steele not having been paid, the defendant, in June, 1884, executed a chattel mortgage to Hunt on his

whole stock in trade, for the purpose of indemnifying the mortgagee against the obligation he had assumed to Steele. The mortgage contains the usual stipulation authorizing the mortgagee to take possession of the mortgaged property whenever he should deem himself insecure, etc. The defendant (the mortgagor) continued in possession of the property, and carried on the business as before. He used portions of the goods in his family, and sold other portions thereof. He applied the proceeds of such sales to the support of his family and in the purchase of other goods, from time to time, which he intermingled with the mortgaged stock. When the mortgage was executed there was no express understanding between the parties to it that the defendant might thus deal with the mortgaged property and the proceeds of the sales thereof. However, the mortgagee lived in the same place, was frequently in defendant's store, often saw him making sales of the mortgaged property, knew that he was thus replenishing his stock, and had all the means of knowing the manner in which he was disposing of the property. Yet he never interposed any objection thereto, but allowed the defendant to go on for seven months thus misappropriating the mortgaged property to his own use. In addition to these facts he testified that when he took the mortgage, his understanding was that the mortgagor should go on and sell the mortgaged goods in the usual way, and might do as he pleased with the proceeds thereof.

The conclusive inference from these facts is that there was an implied agreement or understanding between the parties, when the mortgage was executed, that the mortgagor might deal with the property as he did. Were such not the understanding, it is incredible that the mortgagee would have stood quietly by, and witnessed the misappropriation of the property and the consequent destruction of his security, without remonstrance or objection. Such

agreement was a fraud upon the other creditors of the mortgagor — none the less so because it was implied rather than expressed — and invalidated the mortgage as against them. *Place v. Langworthy*, 13 Wis. 629; *Steinart v. Deuster*, 23 Wis. 136; *Blakeslee v. Rossman*, 43 Wis. 116; R. S. sec. 2306.

That the inevitable tendency and effect of a mortgage, fair and valid on its face, but void because of some extrinsic or secret infirmity, must be to hinder and delay the creditors of the mortgagor in the collection of their debts, is perfectly obvious, and the parties thereto cannot be heard to say that they did not intend that such effect should result from their actions. *Butts v. Peacock*, 23 Wis. 359. In *Place v. Langworthy*, 13 Wis. 629, the present chief justice said that such an agreement in a mortgage is directly calculated to hinder, delay, and defraud the creditors of the mortgagor, and is therefore necessarily injurious to them, and strictly within the statute of frauds. This is so, because the mortgage apparently places the property beyond the reach of such creditors, and drives them to a contest with the fraudulent mortgagee if they seek to enforce payment of their demands out of the property thus fraudulently disposed of or incumbered. When property is mortgaged to one creditor to secure his demand, good faith to other creditors of the mortgagor requires that if the same is sold, the proceeds shall be applied to the payment of the mortgage debt.

Our conclusion is, therefore, that by the execution of the mortgage to Hunt, the defendant conveyed or disposed of his property therein described with intent to defraud his creditors.

Counsel for defendant relied upon the case of *Fisk v. Harshaw*, 45 Wis. 665, claiming that in all material particulars it is like this case. But the claim is not well founded in fact. In that case a majority of the court were of the

opinion that the evidence failed to show any agreement or understanding between the parties to the mortgage that the mortgagors might dispose of the goods, or the proceeds thereof, for their own use or benefit; or that the mortgagee knew of or assented to any such conversion thereof by the mortgagors, after the execution of the mortgage. The judgment sustaining the validity of the mortgage was based upon that view of the evidence. Mr. Justice TAYLOR dissented on the ground that, in his opinion, the evidence satisfactorily established such agreement or understanding, as well as the knowledge of the mortgagee that the mortgagors were converting the property, and the proceeds thereof, to their own use. In that view of the case, his dissenting opinion doubtless contains a correct statement of the law.

*By the Court.*— The order of the circuit court is reversed, and the cause will be remanded with directions to that court to sustain the attachment.