Baum and others vs. Bosworth and others, Garnishees, etc.

BAUM and others, Respondents, vs. BOSWORTH and others, Garnishees, etc., Appellants.

*January 14 — February 1, 1887.*

*(1) Debtor and creditor: Fraudulent conveyance: Chattel mortgage.*
*(2) Evidence of value: Reversal of judgment.*

1. The evidence in this case shows, among other things, that a wholesale mercantile firm, to secure a debt due from an insolvent retail dealer, took a mortgage of his entire stock in trade and fixtures (being everything he had not exempt from execution) worth nearly three times the amount of the debt; that nominally the mortgagees took possession and placed the debtor's brother in charge of the goods, but in fact the debtor attended to the business much as before, making sales as usual and taking goods from the stock for his own consumption, the mortgagees furnishing more goods to keep up the stock; that the mortgagees never asked or received an accounting of the goods sold from the mortgaged stock; that after about three months, the other creditors becoming pressing, the mortgagees had the property sold at auction on one day's notice, bidding it in themselves, and again placed the debtor in charge of the business; that the goods mortgaged were never inventoried; that since the auction sale a large part of the debt to the mortgagees has been paid, but there has never been a full settlement showing what goods have been sold or what the balance due is. *Held*, that the mortgage was void, as having been given with intent to hinder and delay other creditors.

2. A witness was allowed to testify to his opinion of the value of a stock of goods, after he had stated that he made no particular examination of them. He was fully cross-examined and gave the reasons for his opinion. The goods had never been invoiced, and none of the other witnesses on either side knew much, if anything, more about the goods. *Held*, that the testimony could not have misled the jury or prejudiced the appellants.

APPEAL from the Circuit Court for *Door* County.

The facts are sufficiently stated in the opinion.

The cause was submitted for the appellants on briefs by *Winfield Smith,* and for the respondents on the brief of *Turner & Timlin.*

To the point that the transaction in question was fraudulent and the chattel mortgage void, counsel for the respondents cited *Anderson v. Patterson,* 64 Wis. 557; *Smith v. Welch,* 10 id. 91; *Grant v. Lewis,* 14 id. 487; Wait on Fraud. Conv. 198, 257.

ORTON, J. There was an execution for $408.78, in favor of the respondents and against one William Voight, in the hands of the sheriff unsatisfied, and appellants were summoned as garnishees, and answered that they had no money or other property in their hands belonging to said execution defendant, and that they were not indebted to him in any sum whatever. The respondents formed an issue on said answer, and the case was tried by a jury, and a verdict was rendered for the respondents, against said appellants as such garnishees, for the sum of $429, and judgment entered thereon, from which this appeal is taken.

The only exception taken to the ruling of the court was to allowing the witness Scott, the sheriff having said execution in his hands, to testify to his opinion of the value of the stock of goods, after he had stated that he made no particular examination of them. He was very fully cross-examined as to his knowledge, and gave the reasons for his

opinion, and the stock was never invoiced, and all the other witnesses on both sides had very little, if any, more knowledge of the particulars of the stock than he had, and such was the only evidence of its value in the case. We do not think that the jury could have been misled, or the appellants prejudiced, by his evidence.

The main ground of attack upon the judgment is that the verdict was contrary to the evidence. The defendant William Voight was a merchant at Sister Bay, in Door county, and had purchased goods of the appellants, as the firm of *Bosworth & Sons*, of the city of Milwaukee, to the amount of $862.60. On the 6th day of August, 1884, this indebtedness was put in the form of three notes, of $200, $300, and $362.60, payable in sixty days and in three months, at nine per cent. interest, and a mortgage was executed by the said Voight to the appellants on his said stock of goods at Sister Bay to secure the same, and about the 30th day of October said stock was taken by the said appellants on said mortgage and sold at public auction, to themselves, for $600. The respondents predicated their claim against the appellants on the ground that said mortgage was void as to creditors because made and taken to hinder, delay, or defraud the creditors of said William Voight, and this was the issue tried by the jury, upon which the verdict was found against the appellants.

From an examination of the evidence, we are satisfied that there was sufficient evidence to warrant the jury in finding that said mortgage was made at least to *hinder* or *delay* other creditors of Voight, of their lawful actions, damages, forfeitures, debts, or demands, and that was sufficient to avoid it as to the respondents. We certainly cannot find any clear preponderance of the evidence against the verdict. One Gotlieb Voight, the brother of William, owned the store, and had purchased quite a large quantity of goods from the appellants, and settled up his accounts

with them previous to March, 1883, and turned over to William at that time the stock that was left and the business, and the appellants commenced selling William goods on credit, and changed the heading of their books by writing " W." in the place of " G." William had very little, if any, ready means, and he continued to make purchases of them and of other merchants on credit, and to make sales, and did a very fair business for a country merchant, until said mortgage was placed upon his entire stock in trade and the fixtures of his store, in August, 1884. He had no other property not exempt from execution, and he had become indebted in large sums to other creditors, which he was unable to pay, many of which went into judgments soon after said mortgage was given, and executions thereon were returned unsatisfied and no property found. He was grossly insolvent when said mortgage was given. Can it be possible that none of the appellants made any inquiry into his circumstances, and did not know that he was greatly in debt and insolvent? They did not all testify in the case, and we cannot but think that, as good business men as they undoubtedly were, they had sufficient knowledge of William's circumstances to make them anxious, at least, to obtain security for their claim. They took a mortgage upon everything he had liable to execution, and all the other creditors were held off. The value of the property mortgaged was nearly three times the amount of their debt. When the mortgage was given they sent an agent to Sister Bay, and he, *ex industria*, went through the form of taking possession of the stock and store, and ostensibly placed Gotlieb Voight, who lived at Hedge-hog Harbor, about ten miles distant, and engaged in other business there, in possession of the same for the purpose of continuing the business, and before the 30th day of October, when said goods were sold at auction, or the balance of them, sales were continued to be made out of the stock in the

same way as formerly, and the appellants furnished the concern more goods to keep up the stock, and none of said sales for nearly three months were ever accounted for in any way, and the appellants received only sufficient during this time to pay for the new goods so furnished, and they have never asked for an accounting for the sales so made out of the mortgaged stock, and they do not yet know the amount thereof. Gotlieb did not personally attend to the business, and only occasionally visited the store. It seems, according to the testimony of William, that Gotlieb appointed a little girl, their niece, who lived with and worked for William in a room adjacent to and connected with said store, as his agent to sell goods and to take general charge of the business, and she did so when William was absent, but when he was present he made sales and attended to the business as usual. He lived with this little girl and kept house in the same building as the store, and was a single man, and he took tea, coffee, sugar, and tobacco and other goods from the stock to live on in the mean time.

In this way the business was so conducted, and to those who visited the store William appeared to be doing business as usual, until executions began to press upon him and other creditors became clamorous for their pay, when, about the 30th day of October, the same agent of the appellants appeared again at Sister Bay, and again took possession of the remnant of the stock, and on one day's notice had it sold, and bid it off for the appellants for $600, there being no other bidder present. There never was, from first to last, any inventory made to determine what was mortgaged or sold. As soon as sold, William was again placed in possession of the store and stock, and continued to do business and sell therefrom as before, but ostensibly as the agent of the appellants, and there has been paid, in cord-wood received for goods since that time, about $700 on the notes given, and William has considerable cord-wood yet on hand, and, so far as appears

from the case, the business at the store has continued very much as formerly, only it is supposed the stock mortgaged has all been sold out. There has never been a full and final settlement between the appellants and William, in order to ascertain what real balance of the debt remained unpaid or what goods had been sold and for what. The agent testified that "he did not know what goods were left with William, and he would have to trust his honesty for that." When, by the evidence for the plaintiff, it appeared that the stock mortgaged was worth at least $2,000, William Voight testified on behalf of the defendant that his brother Gotlieb owned at least half of it, when he had already testified that he owned the stock and mortgaged the whole of it. His testimony was not very clear or reliable, on account of its frequent contradictions. The mortgage was upon the whole stock in bulk, without specification, and so the sale was made of what there was left of it.

Do not these facts show an intent on the part of the appellants to so take the mortgage and proceed under it as to enable William Voight to continue on in his business as a merchant and to live on its profits, and hold off other creditors, and finally trust to William's integrity in managing it to some time get their debt discharged? This mortgage and the proceedings under its protection have certainly had the effect to enable William to continue his business for the sole benefit of himself and the appellants, and to hinder and delay the other creditors. If such be the legitimate effect, it must be presumed that such was the design. Who knows or can know that the sales during the three months between the giving of the mortgage and the public sale were not sufficient to have paid the appellants' claim? There was no account of these sales ever kept or rendered or asked for, and all the time the appellants were ostensibly conducting the business through their agent, Gotlieb Voight. Was this fair, or a fraud on creditors? It would seem that

the appellants had unreasonably, unnecessarily, and indulgently delayed, through this pretext or contrivance, the collection of their own claim, for the purpose of hindering and delaying other creditors. Mr. Justice LYON said in *Anderson v. Patterson,* 64 Wis. 557: "The conclusive inference from these facts is that there was an implied agreement or understanding between the parties, when the mortgage was executed, that the mortgagor might deal with the property as he did. Were such not the understanding, it is incredible that the mortgagee would have stood quietly by, and witnessed the misappropriation of the property and the consequent destruction of his security, without remonstrance or objection." The appellants not only did all this, but furnished the mortgagor, from time to time, more goods to continue the business with. If this transaction can be supported, then there can scarcely occur a case where the parties designed and intended to hinder or delay other creditors, for the circumstances leading to such a conclusion are most unusually strong and conclusive. See cases cited in respondents' brief.

*By the Court.*— The judgment of the circuit court is affirmed.