The Charles Baumbach Co. vs. Hobkirk and another.

THE CHARLES BAUMBACH COMPANY, Appellant, vs. HOBKIRK and another, Garnishees, Respondents.

*October 24 — November 7, 1899.*

*Chattel mortgages: Fraud: Jury trial: Waiver.*

1. In garnishment proceedings to reach a stock of goods which had been taken possession of under a chattel mortgage, it appeared, among other things, that the mortgagor and mortgagees were brothers; that the mortgagor remained in possession of the stock and conducted the business as before the mortgage was given, using the proceeds as he pleased; that the mortgagees were frequently about the store and knew the manner in which the business was conducted; and that only small payments were made by the mortgagor. *Held,* that these facts showed an implied agreement that the mortgagor might so act, which rendered the mortgage fraudulent and void as to other creditors of the mortgagor.
2. The right to a jury trial of an action is waived by participating, without objection, in its trial as an equitable action.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Reversed.*

This is a garnishment proceeding. The plaintiff sued one Robert Hobkirk upon a claim of $405.65, and at the same

time garnished the respondents herein. The respondents answered to the affidavit of garnishment, stating, in effect, that the main defendant, Robert Hobkirk, on the 7th of June, 1894, was indebted to his father Robert Hobkirk, Sr., in the sum of $2,700, which debt was evidenced by a promissory note for the said sum, and which note was secured by a chattel mortgage executed by Robert Hobkirk and his wife to said Robert Hobkirk, Sr., said mortgage covering a certain stock of goods, wares, and merchandise in the city of Waupun, Wisconsin; that in February, 1895, said Robert Hobkirk, Sr., sold and assigned said mortgage and note to the garnishees herein, and that on the 6th of June, 1896, an affidavit of renewal of said chattel mortgage was duly made and filed. The answer further alleges that a second chattel mortgage to secure the same debt, and upon the same stock of goods, was given by the same mortgagees to the garnishees on the 8th day of December, 1896, and that a third chattel mortgage for the purpose of securing the same note was executed by the said Hobkirk and wife to the garnishees June 16, 1897; that certain payments have been made by said Robert Hobkirk, Jr., upon the said note, amounting to about $300, and no more; that on the 19th day of July, 1897, the garnishees took possession of all the goods, wares, and merchandise set forth in the said several chattel mortgages, which at cost price foot up to the amount of $3,001.50, and that said property has not yet been sold, and the garnishees claim the right to take from the proceeds of the sale of said property the principal and interest of said note, with the costs of foreclosing the mortgage.

The plaintiff took issue upon the answer of the garnishees, and the action came to trial. At the commencement of the trial the court stated: "I am disposed to submit special questions to this jury in the nature of an advisory verdict. Proceed with the case." No objection or exception was taken by either party to this remark, and the trial proceeded,

and at the close of the case the court submitted five special questions to the jury, which questions, with their answers, are as follows: "1. Was there an existing, a *bona fide,* indebtedness at the time of the making, executing, and delivering of the note and chattel mortgages in question by the said defendant, Robert Hobkirk, and for which the same were given? *A.* Yes. 2. Were the said note and chattel mortgages in question made and given by the said defendant, Robert Hobkirk, with the intent to hinder, delay, or defraud his creditors? *A.* No. 3. Were the said note and chattel mortgages in question made and given by the said defendant, Robert Hobkirk, with the intent to hinder, delay, and defraud the plaintiff? *A.* No. 4. Were the said note and chattel mortgages made, executed, and delivered by the said defendant, Robert Hobkirk, to the garnishee defendants, *William Hobkirk* and *Frank Hobkirk,* and received by them, with such a fraudulent intent as to avoid the same? *A.* No. 5. Was the said note and chattel mortgage in question, bearing date June 16, 1897, fraudulent as to the plaintiff? *A.* No."

Upon the coming in of this verdict the garnishee defendants moved for judgment thereon, and at the same time the plaintiff moved for judgment in its favor notwithstanding said verdict. The court overruled the plaintiff's motion for judgment, to which exception was taken, and then made and filed findings of fact which consisted simply of the recitation and formal adoption of the jury's findings together with conclusions of law to the effect that the garnishee defendants were not liable to the plaintiff in any sum. Prior to the making of these findings the plaintiff requested the court to make findings in its favor to the effect that said mortgages were all fraudulent and void as to creditors.

The plaintiff appeals from judgment upon the findings in favor of the garnishee defendants.

The cause was submitted for the appellant on the brief of *C. E. Hooker,* and for the respondents on that of *E. D. Doney.*

Winslow, J.  The fact that the plaintiff was a creditor of the main defendant and had obtained judgment on its claim before trial of the garnishee action was established without dispute.  The evidence also showed beyond controversy that there was an honest debt, amounting to $2,700, owing from the main defendant to the assignor of the garnishees when the first chattel mortgage was given, and that such debt was thereafter transferred to the garnishees, and remained their property, save for certain small payments, up to the time of the seizure of the mortgaged property, and the only serious question necessary for consideration is whether the evidence shows conclusively that the last mortgage, which was given about a month before the seizure, was fraudulent as to creditors of the main defendant, of whom the plaintiff was one. Upon well-established principles this question must be answered in the affirmative.  The evidence shows that all of the successive mortgages covered a stock of goods consisting of drugs and wall paper, of which the main defendant was in possession all of the time up to the time of the seizure of the stock by the garnishees on the 19th day of July, 1897. During all of this time the main defendant conducted the business, using the proceeds of the sales as he pleased.  The main defendant testified, in substance, that the stock of goods constituted his entire property except a homestead, and that during the entire time and until July 19, 1897, he conducted the business, sold the goods, used the proceeds as he pleased for the support of himself and family, the running expenses of the store, and the payment of private debts; that his brothers, *Frank* and *Will* (the garnishees) knew that he was selling the goods and using the proceeds for his own use; that they were in the store frequently, and that he thinks it was understood by him with them, when the later mortgages were given, that he should continue in the same way.  Later, however, he denied that it was agreed that he should use any of the proceeds of sales for his own

The Charles Baumbach Co. vs. Hobkirk and another.

benefit or the support of his family, and claims that *nearly* his entire living expenses were derived from the profits of a news stand which he ran in connection with the drug business, and which was not included in the mortgages. The garnishee defendant *William* does not deny that he was frequently about the store, and, after much questioning, admitted that he supposed during the existence of all the mortgages that the main defendant would have to use a part of the proceeds of the business for the support of his family and to pay his private debts. The garnishee defendant *Frank* denies generally that there was any agreement that the main defendant might use any of the proceeds of sales to pay his family expenses, but does not deny that he was frequently in the store and knew the manner of conducting the business. These facts are substantially identical with the facts appearing in the case of *Bank of Kaukauna v. Joannes*, 98 Wis. 321, where it was held that the conclusive inference from such facts is "that there was an implied or tacit agreement or understanding that the mortgagor was to be at liberty to use, sell, and dispose of the mortgaged property, and apply the proceeds to his own use, in like manner as before and as if they had not been mortgaged to the bank." Such an implied agreement renders the mortgage fraudulent and void as to creditors. It is as effective for that purpose as if it were express.

A claim seems to have been made upon the trial that the stock was turned over by the main defendant and received by the garnishees in payment of the debt, and an amendment of the garnishees' answer to this effect was allowed by the court at the close of the trial. As to this claim it is sufficient to say that there is absolutely no evidence to sustain it. All the evidence on the subject shows that the mortgagees took the property under the terms of their mortgage, and not in payment or extinguishment of the debt.

The case was tried as though it were an equitable action.

A jury was present and rendered an advisory verdict, but the court finally made findings and rendered judgment thereon, without objection or exception to that mode of trial, and in fact apparently with the consent of both parties, neither of whom demanded a jury trial. If the action was in fact one in which a jury trial is guaranteed under the constitution (a point which is not decided), still, having been tried without objection, either in the trial court or this court, as an equitable action, the right of trial by jury must be held to have been waived. *Leonard v. Rogan*, 20 Wis. 540.

*By the Court.*— Judgment reversed, and action remanded with directions to render judgment for the plaintiff in accordance with this opinion.