## CHARLESTON CO-OP v. A. W. ALLEN & BROS. SWEAT v. ALLEN et al.

No. 2284.   Decided April 17, 1912 (123 Pac. 578).

ATTACHMENT—GROUNDS—FRAUDULENT SALE OF PROPERTY. Under Comp. Laws 1907, sec. 2473, providing that every sale by a vendor of chattels, unless accompanied by a delivery and followed by an actual and a continued change of possession, shall be conclusive evidence of fraud as against the vendor's creditors, the sale of chattels without a delivery, and not followed by an actual change of possession, constituted, in law, a fraudulent disposition of property as against the vendor's creditors, so as to authorize them to sue out an attachment.

APPEAL from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Actions by Charleston Co-op. against A. W. Allen and Bros. a partnership consisting of A. W. Allen and others, and by Louis Sweat against A. W. Allen and others, copartners doing business under the firm name of A. W. Allen and Bros., in which attachments were issued.

Judgment for plaintiff in each case.   Defendants appeal.

AFFIRMED.

*Stewart, Stewart* and *Alexander* for appellants.

*A. C. Hatch* for respondents.

STRAUP, J.

There are two cases, different plaintiffs against the same defendants, copartners in the sheep business.   Both were brought to recover money judgments, one for a balance due for merchandise sold and delivered to the amount of $1091, the other for a balance due, amounting to $220, on a promissory note.

In both cases, attachments were issued and levied on personal property in the possession of the defendants, and alleged to be owned by them, consisting of about 360 head of sheep and fire stacks of hay. In the one the attachment was sought on the ground that the defendants had assigned and disposed of part of their property with the intent to defraud creditors, and that they were about to assign and dispose of other property with like intent; and, in the other, that the defendants had disposed of and concealed, and were about to dispose of, their property with the intent to defraud creditors.

A motion was made in each case to dissolve the attachment, on the ground that the alleged facts upon which the attachment was issued were untrue. The motions were heard on affidavits and oral testimony, and were denied. The attached property was held by the sheriff, and was cared for by him pending the actions. A judgment was rendered in each case for the plaintiff on the issues presented by the complaint. Executions were issued, and the attached property ordered sold and the proceeds of sale, after payment of costs, to apply on the judgments. As costs and charges for the care and keep of the attached property, the court allowed $381.50 for a keeper and herders, $174 for teams and other help, $107.20 for supplies for the sheep and camp supplies, and $30.55 for other costs, a total of about $693. It is not claimed that these charges are excessive or unreasonable. The only claim made by the defendants on their appeals in both cases is that the court erred in refusing to dissolve the attachments, and for that reason such costs and charges required the taking of more property to satisfy the respective judgments than otherwise would have been necessary. This is the only matter presented for review.

The defendants were financially embarrassed. Their ranch, valued by them at $10,000, was mortgaged for $6400. The legal title was in the name of one of the partners. He and his wife, by deed, conveyed it to another partner. They mortgaged some of their sheep to secure creditors other than plaintiffs. To other creditors, they turned over other sheep

in payment of claims. They had left about 500 or 600 head of sheep in their possession, not covered by the mortgages, and not delivered to creditors. They refused to give plaintiffs a mortgage, or otherwise to secure their claims. The defendants claimed that the 500 or 600 head of sheep in their possession and the hay were sold and delivered to their father, who was not a member of the partnership, in payment of a promissory note held by him against the defendants in the sum of $4000 and accrued interest. About 360 head of these sheep and the hay were attached by the plaintiffs. The defendants moved to dissolve the attachments, and claimed that the attached property was the property of their father, sold and delivered to him prior to the attachment, and exhibited a bill of sale, evidencing the sale and delivery of the sheep and hay in payment of the promissory note referred to, which was also exhibited and put in evidence. The plaintiffs contended that the note and bill of sale were fictitious, and were given wholly without consideration and to defraud creditors, and that no actual delivery or change of possession was made or had of the sheep or the hay, and that the sale was fraudulent as against the plaintiffs.

The court found that the note given by the defendants to the father was founded upon a valuable consideration; that it was unpaid; and that the defendants were indebted to him in the amount as evidenced by the note. The court also found that there was no actual or any delivery of the sheep or hay, nor any actual or continued change of possession, and for that reason held the sale fraudulent as against the creditors of the defendants.

There is evidence to support the finding that the note held by the father against the defendants was given for a valuable consideration. The evidence also supports the finding that the sale made, by the defendants to the father, of the sheep and hay was not accompanied by a delivery, or by any actual or continued change of possession. Upon this point, the evidence is without any substantial conflict.

We have a statute (Comp. Laws 1907, section 2473) which provides:

40 Utah—37

"Every sale made by a vendor of goods or chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be acompanied by a delivery within a reasonable time, and be followed by an actual and continued change of the possession of the things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor, or assignor, or subsequent purchasers in good faith. The word 'creditors,' as used in this section, shall be construed to include all persons who shall be creditors of the vendor, or assignor, at any time while such goods and chattels shall remain in his possession or under his control."

Under this statute the court regarded the transaction of the sale, without a delivery or a change of possession of the things sold, fraudulent as against the plaintiffs, who were creditors of the defendants, and as a sufficient showing of a fraudulent disposition of property, to hinder, delay, and defraud creditors, to authorize the granting of an attachment. The authorities are somewhat divided as to whether such a transaction is alone sufficient to authorize the granting of an attachment. The cases of *Schwabacker v. Rush,* 81 Ill. 310, *Simmons Hardware Co. v. Pfeil,* 35 Mo. App. 256, *La Belle Iron Works v. Hill* (C. C.), 22 Fed. 195, and *Leser & Co. v. Glaser, Straus & Co.,* 32 Kan. 546, 4 Pac. 1026, are to the effect that such a transaction alone is not so sufficient. They proceed on the theory that an intent to hinder, delay, or defraud creditors will not be inferred or presumed from a void sale, or one in which the title to the chattels did not pass, because of nondelivery and no change of possession; and that, to authorize the granting of an attachment, there must be other evidence of an intent to delay, hinder, or defraud creditors, or other fraudulent disposition of property for such purpose. On the other hand, there are respectable authorities which hold that a fraudulent disposition of property to hinder, delay, or defraud creditors, sufficient to authorize the granting of an attachment, may be inferred or presumed from the facts of nondelivery and no change of possession of the sold goods and chattels, and the vendor's control over them

as an apparent owner, after, as before, the sale. (*Roy v. Union Mer. Co.*, 3 Wyo. 417, 26 Pac. 996; *Reed v. Pelletier*, 28 Mo. 173; *Schumann v. Davis* (Com. Pl.), 14 N. Y. Supp. 284; *Powers v. Goins* (Tenn. Ch.), 35 S. W. 902; *Sauer v. Behr*, 49 Mo. App. 86; *Anderson v. Patterson*, 64 Wis. 557, 25 N. W. 541; *Robinson v. Worley* (Ky.), 42 S. W. 95.) These cases proceed on the theory that the tendency and effect of such a transaction is to hinder, delay, and defraud creditors, and is, in law, fraudulent, and that it is not necessary to show that the act originated in any meditated design to commit a positive or actual fraud, or to injure creditors or other persons, and that it is an act or transaction which, though not the result of intentional fraud, nevertheless, from its tendency to deceive other persons, or from its injurious consequences to creditors and the public, the law regards as fraudulent and prohibits, as being within the same reason and mischief as actual fraud.

We think the latter theory is more in harmony with our statute. The committed act of the defendants, as found by the court—the sale by the defendants of the goods and chattels in their possession, not accompanied by a delivery, and not followed by an actual and continued change of possession—is by the statute declared to be fraudulent as against creditors. It, in law, constitutes a fraudulent disposition of property to hinder, delay, or defraud creditors to the same extent as any other fraudulent disposition of property with an actual intent to hinder, delay, or defraud creditors. We think the ruling was right.

The judgments of the court below are therefore affirmed, with costs.

McCARTY, J., concurs.

FRICK, C. J.

I concur. I feel constrained to say, however, that my first impressions were that, where, as in this state, a debtor may prefer a creditor, and may pay one or more of his creditors when he is unable to pay all, an attempt to transfer

property to one creditor, for the purpose of discharging a *bona fide* indebtedness, which transfer fails for the sole reason that the statute of frauds has not been complied with, in that the delivery of the property and the change of possession thereof were not made as provided by the statute, is, when standing alone, not sufficient to authorize the levying of an attachment on the property sought to be transferred, although an execution might properly be levied thereon as property belonging to the debtor. I had supposed that a mere abortive attempt to transfer property to a creditor to whom the law permits a transfer to be made for the purposes before stated, and where no actual fraudulent intent or purpose is involved, would not give another creditor of the debtor any greater right to attach the property than if the transfer had, in all respects, been made according to the statute. Of course, if the attaching creditor should allege and prove that he was misled into extending credit after the attempted transfer was made, a different case would be presented. There are, however, authorities, as pointed out by Mr. Justice Straup, which make the mere attempt to transfer, under the circumstances I have detailed, a sufficient ground to issue an attachment. Such, also, seems to be the purpose and intent of our statute (section 2473), referred to by Mr. Justice Straup. If, under the statute, such an attempt constitutes fraud as between debtor and creditors, we have no alternative, save to enforce the statute as we find it.

For the foregoing reasons, I am forced to the conclusion that the judgments in these cases should be affirmed.