Ross, Trustee in bankruptcy, Appellant, vs. STATE BANK OF TREGO and others, Respondents.

*February 6—March 5, 1929.*

For the appellant there was a brief by *A. C. Barrett* of Spooner and *Laurence S. Coe* of Rice Lake, and oral argument by *Mr. Coe.*

*W. T. Doar* of New Richmond, for the respondents.

STEVENS, J.   (1) The first question presented is whether the chattel mortgage was a valid and subsisting lien on the fixtures and stock of goods at the time of the fire.   It appears that Mr. Furchtenicht's store was directly across the street from the bank in the village of Trego; that the managing officers of the bank bought merchandise at this store and knew that others were doing the same and that Mr. Furchtenicht continued to do business and use the proceeds of sales for his own personal use exactly as he had done before the chattel mortgage was given without making any payment upon the principal or the interest of his indebtedness to the bank.   Under this state of the proof the finding of the court that the bank had no knowledge that the proceeds of sales of the stock of goods were being improperly diverted is so clearly contrary to the great weight and clear preponderance of the evidence that it cannot stand.

The chattel mortgage did not provide what should be done with the proceeds of the sales.   The conclusive inference

from the course of business pursued by Mr. Furchtenicht with knowledge of the officers of the bank is " 'that there was an implied or tacit agreement or understanding that the mortgagor was to be at liberty to use, sell, and dispose of the mortgaged property, and apply the proceeds to his own use, in like manner as before and as if they had not been mortgaged to the bank.' Such an implied agreement . . . is as effective for that purpose as if it were express." *Charles Baumbach Co. v. Hobkirk,* 104 Wis. 488, 492, 80 N. W. 740. "A mortgage which permits the mortgagor to remain in possession of the mortgaged property, and to sell it and apply the proceeds, partially or wholly, to his private use, is void as to creditors." *Durr v. Wildish,* 108 Wis. 401, 404, 84 N. W. 437. " 'When property is mortgaged to one creditor to secure his demand, good faith to other creditors of the mortgagor requires that, if the same is sold, the proceeds shall be applied to the payment of the mortgage debt.' " *Bank of Kaukauna v. Joannes,* 98 Wis. 321, 328, 73 N. W. 997.

Had the diversion of the proceeds of the sales been confined to the replenishment of stock, the chattel mortgage would probably have been valid if the statements required by sec. 241.14 of the Statutes had been filed. *Durr v. Wildish,* 108 Wis. 401, 404, 84 N. W. 437. We need not consider whether the mortgagor was excused from filing such statement by the fact that the fire occurred just four months to a day after the chattel mortgage was given, because it clearly appears that the proceeds of sales were used for other purposes than to replenish the stock.

This rule, however, applies only to the stock of merchandise, not to the mortgage upon the fixtures. " 'A mortgage covering a stock of goods and fixtures, although constructively void as to the stock of goods by reason of the mortgagor's right to continue in possession and sell them, is held binding upon the fixtures, as to which the power of sale did

not apply.' " *Eastman v. Parkinson,* 133 Wis. 375, 388, 113 N. W. 649.

The chattel mortgage being void as to creditors so far as it was a security upon the stock of goods, the bank was an unsecured creditor as to its entire claim against Mr. Furchtenicht, except in so far as its claim was secured by the chattel mortgage on the fixtures. Mr. Furchtenicht was insolvent at the time the insurance money was paid. He was adjudged bankrupt within four months from the date of that payment. The payment of the claims of the bank in full out of this fund gave the bank a greater percentage of its unsecured claims than other unsecured creditors will be paid. If the bank at the time this insurance money was paid had reasonable cause to believe that it thereby secured a preference, the plaintiff trustee is entitled to recover all the amounts so paid to the bank, except the amount of insurance money which represented the value of the fixtures.

The trial court found that the bank did not have reasonable cause to believe that Mr. Furchtenicht was insolvent. If this finding stands it is decisive of the case, because the finding that the bank had reasonable cause to believe that Mr. Furchtenicht was insolvent is the first and essential requisite to a finding that there was reasonable cause to believe that the payment in question would result in a preference. "It is not necessary to show actual knowledge or an actual belief on the part of the creditor receiving the transfer, but reasonable cause to believe. This may be established by proof of knowledge of such facts as would lead an ordinarily prudent business man to believe the transfer would effect a preference." *Goetz v. Zeif,* 181 Wis. 628, 639, 195 N. W. 874.

The proof shows that the bank knew that Mr. Furchtenicht had paid nothing on his indebtedness to the bank; that he not only owed the bills which he himself had incurred in the business, but that he had assumed and still owed debts

created by his predecessor in business; that he was not able to pay these debts; that he was hard pressed by his creditors, who were suing him and garnisheeing the bank, and that his checks frequently went to protest for lack of funds.

The bank also knew that to secure the indebtedness due the bank Mr. Furchtenicht had given this chattel mortgage upon all the property owned by him, except an old Ford car and the village lot on which the store building stood, which lot was subject to at least two real-estate mortgages; that he ceased to do business after the fire; that his ability to pay his creditors depended upon the amount which he received from the insurance; that his creditors had resorted to garnishment and to orders upon the insurance companies in an attempt to secure payment of their claims against the bankrupt, and that after the fire he had incurred liabilities in considerable amount in addition to the debts owed by him at the time of the fire.

Had all these facts been known to an ordinarily prudent business man, he would have had reasonable cause to believe that a preference would result if he applied to the debts due him, as did the bank, over $6,000 of the insurance fund, which was two thirds of the entire fund, leaving only one third of the amount, or about $3,000, to satisfy all the other creditors of the bankrupt, knowing, as did the bank, that there was a considerable number of such unsecured creditors, one of whom at least had a claim that exceeded $1,000.

But the bank did not stand in the position of an ordinary unsecured creditor. It was the institution through which the bankrupt did his banking business. The managing officers were familiar with the state of his affairs as they did the entire work of the bank, with the assistance of a part-time girl. The assistant cashier testified that they were quite familiar with the bankrupt's financial affairs. They were called upon to aid him in dealing with his creditors and in settling his affairs with them. Knowing all these facts we

can readily understand why this managing officer, while testifying, would go no farther than to say that when the bank collected this money on its debts he did not know whether or not the bankrupt was insolvent. As already pointed out actual knowledge is not required. The issue is whether the bank's officials had reasonable cause to believe that the bankrupt was insolvent and that the payment of the debts to the bank out of the insurance fund would create a preference. Upon that question the proof is so clear and convincing that a finding that the bank did not have reasonable cause to believe that it was securing a preference is so contrary to the clear preponderance and great weight of the evidence that it cannot stand.

This evidence clearly presents a situation where the court must find that the bank had reasonable cause to believe that it was securing a preference. This preference having been given within four months prior to the bankruptcy, the trustee is entitled to recover of the bank $4,884.31, being the amount which the bank applied to the bankrupt's debts to it, after deducting therefrom the amount of the insurance upon the fixtures which belonged to the bank under this chattel mortgage. The amount of the trust fund arising out of the proceeds of the insurance policies being sufficient to pay the amount which plaintiff is entitled to recover, the judgment is so modified as to increase the amount thereof to $6,954.03 with interest thereon from August 12, 1926, and as so modified is affirmed.

*By the Court.*—So ordered.