VANDEN WYMELENBERG and another, Respondents, vs. BADGER FURNACE COMPANY, Appellant.

*December 3, 1935—March 3, 1936.*

474

The cause was submitted for the appellant on the brief of *Benton, Bosser, Becker & Parnell* of Appleton, and for the respondents on that of *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay.

MARTIN, J. Among other findings made by the trial court were the following:

"That an agreement existed between J. H. Van Vreede [debtor] and Badger Furnace Company [appellant] at the time of the execution of the mortgage on February 27, 1933, that the mortgagor would remain in possession of the property covered by the mortgage and sell it in the ordinary course of trade and retail dealing, as he had before the execution of the mortgage.

"That goods were sold by the mortgagor in the ordinary retail trade and the proceeds were not applied toward the payment of the mortgage debt.

"That the mortgagee at all times knew that no moneys had been applied on the mortgage debt.

"That no replacements of goods, wares and merchandise were made under the chattel mortgage of the goods, wares and merchandise sold in the ordinary course of retail trade.

"That the proceeds derived from the sale of goods, wares and merchandise covered by the chattel mortgage were used by the mortgagor for his own purposes. . . .

"That all the right, title and interest of J. H. Van Vreede in the property covered by the chattel mortgage, dated February 27, 1933, passed to the trustees for the benefit of creditors of said J. H. Van Vreede.

"That the value of the property covered by the chattel mortgage is $600."

As a conclusion of law, the court found that the chattel mortgage was void, and gave judgment in favor of the respondent trustees as indicated in the statement of facts. The

chattel mortgage was the common form, and contained no provision as to the mortgagor's right to sell any of the property covered by it, or as to what should be done with the proceeds of sale in the event that sales were made.

In its written decision filed, the trial court said:

"From the testimony, I believe the court must say that the minds of the parties met, agreed, and assented to the proposition that Van Vreede could sell, at retail, in the ordinary course of business, the property covered by the mortgage. Sales were made from this mortgaged stock, and there is no evidence showing that the money Van Vreede obtained by such sales was used for the replacement of stock sold. It is admitted that none of the proceeds thus obtained by Van Vreede in the sale of such mortgaged stock were applied to the mortgage debt."

The appellant contends that the foregoing findings are not sustained by the evidence. A careful examination of the testimony satisfies us that there is sufficient evidence to sustain the finding as to the existence of the agreement referred to in the first paragraph of the findings quoted above; also as to the findings contained in the second and third paragraphs. There is no evidence on the subject of replacements of the goods, wares, and merchandise sold. The finding that the proceeds derived from such sales as were made from the mortgaged stock were used by the mortgagor for his own purposes follows as an inference from the evidence given by the mortgagor at the trial to the effect that he had sold some of the mortgaged property, and that he had made no payment on principal or interest to the mortgagee. However, there is no finding that the mortgagee knew that the mortgagor was devoting the proceeds of any sales from the mortgaged stock to his own use. The mortgagee understood that the mortgagor might sell the mortgaged property. The secretary-treasurer of the mortgagee testified that he knew the

mortgagor had sold some of the seasonal stock covered by the chattel mortgage.

In *Durr v. Wildish,* 108 Wis. 401, 84 N. W. 437, the court said that when a chattel mortgage of a stock of goods "is silent as to the disposition of the proceeds of sale made by the mortgagor over and above the additions to the stock, the law would presume that such proceeds were to be applied in satisfaction of the mortgage debt." This is said of a mortgage expressly providing for sale and purchase of new goods, but the same presumption as to application of proceeds of sales exists in the instant case in view of sec. 241.14 (1) and (2), Stats.

The statute renders valid mortgages in ordinary form of stocks of goods, provided the affidavits are filed as required by the statute showing proper application of the proceeds of sales. That the statute does not contemplate that the provision permitting sales must be incorporated in the mortgage appears from the fact that sub. (2) of the statute requires insertion in the mortgage that goods acquired in the future are covered by the mortgage, in order that the mortgage shall cover such goods. Had it been intended that the provision respecting sale and application of proceeds should be inserted in the mortgage in order to prevent sales from invalidating the mortgage, sub. (1) would have so stated, as sub. (2) states respecting coverage. In *Fisk v. Harshaw,* 45 Wis. 665, it was held that a mortgage of a stock of goods was valid where the mortgagor was left in possession with permission to sell from the mortgaged stock and apply all the proceeds toward the mortgage debt, unless it was made with intent to hinder and delay creditors; that if there was agreement that the mortgagor might apply the proceeds or a part thereof to his own use, or permission so to apply them was given, the mortgage was void as a matter of law because it hindered and delayed creditors and was therefore fraudulent as against them, but in the absence of such agreement or per-

mission the validity of the mortgage depended upon the facts respecting the intent with which it was executed.

Respondents' counsel contends that, upon the facts in the instant case, there is a conclusive inference that there was an implied or tacit agreement or understanding that the mortgagor was at liberty to dispose of the mortgaged property and apply the proceeds to his own use, and in support of such contention cites *Ross v. State Bank of Trego,* 198 Wis. 335, 224 N. W. 114, and *Blakeslee v. Rossman,* 43 Wis. 116. In the *Ross Case,* pages 337, 338, it is said:

"The conclusive inference from the course of business pursued by Mr. Furchtenicht [the mortgagor] *with knowledge of the officers of the bank* [the mortgagee] is 'that there was an implied or tacit agreement or understanding that the mortgagor was to be at liberty to use, sell, and dispose of the mortgaged property, and apply the proceeds to his own use, in like manner as before and as if they had not been mortgaged to the bank.'"

The conclusive inference here referred to arises from the particular facts in that case. The mortgagor's store was directly across the street from the bank in the village of Trego; the managing officers of the bank bought merchandise at this store and knew that others were doing the same, and that the mortgagor continued to do business and use the proceeds of sales for his own personal use exactly as he had done before the chattel mortgage was given, without making any payment upon the principal or the interest of his indebtedness to the bank. On such facts, the trial court found that the bank had no knowledge that the proceeds of sales of the stock of goods were being improperly diverted. On appeal, this court held that such finding "is so clearly contrary to the great weight and clear preponderance of the evidence that it cannot stand."

In the *Blakeslee Case,* at the time the chattel mortgage was executed, a contemporaneous agreement was made permitting the mortgagor to remain in possession and dispose of

the goods in the course of his trade, and apply one half of the proceeds of the sales upon his liability to the mortgagees, without making any provision for the disposition of the other half. The court held that such agreement left one half of the proceeds from such sales at the absolute disposal of the mortgagor for his own use.

The facts in the instant case are clearly distinguishable from those in the two cases referred to above. We find no evidence in the instant case that the mortgagee agreed or understood that the mortgagor might devote the proceeds of sales of the mortgaged property to his own use, or that the mortgagee had any knowledge that the mortgagor was devoting the proceeds of sales from the mortgaged property to his own use or any improper use, and the trial court has made no finding on that issue. The mortgagee might presume, in the absence of evidence to the contrary, that the mortgagor would hold the proceeds of such sales as he made of the mortgaged property for payment on the mortgage debt, and rightly continue in that presumption until the period for filing the affidavit required by sec. 241.14, Stats., had expired.

Thus the only issue of fact in this case determinative of the validity of the mortgage is whether the parties agreed in the first instance that the mortgagor might devote the proceeds of sales or part thereof to his own use, or whether, no such agreement existing, the mortgagee knowingly permitted such application to be made. This issue was not tried in the court below. It is the decisive issue in the case. For this reason there must be a new trial.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.

WICKHEM, J., dissents.