## TYLER v. YREKA WATER CO. et al.

WHERE a mortgage is given to secure the separate debts of several persons as mortgagees, it is a several security, and may be enforced by each creditor, as in case of a separate mortgage. But where other parties are interested in the property, the Court will require them to be brought in before ordering a sale or foreclosure.

Where, in such case, bill avers the other mortgagees are no longer interested, and they are not parties, demurrer for defect of parties does not lie.

APPEAL from the Ninth District.

The Court below sustained the demurrer, and gave plaintiff time to amend his complaint. Plaintiff failing to amend, judgment was rendered dismissing the suit for failure to prosecute. Plaintiff appeals.

*G. W. Tyler*, for Appellant.

There is no defect of parties.

1. The debt secured by the mortgage sought to be foreclosed in this suit, is not a joint debt, but a number of distinct, separate, or several, debts, secured by the same instrument; the legal effect of which is the same, as though there were several mortgages, one for the security of each debt, recorded at the same time.

It follows, then, that it would not have been necessary to join any of the other mortgagees, as parties to this suit, but as there are other parties, as appears on the face of the mortgage, who have an equal interest in the security sought to be appropriated to the payment of plaintiff's debt, the Court should have ordered that the mortgage should be foreclosed, the mortgage property sold, and the proceeds of such sale paid over to a mas-

ter, to be divided, *pro rata*, among the mortgagees. (*Douly* v. *Hayes*, 17 Serg. & R. 400; *Ord* v. *McKee*, 5 Cal. 515.)

2. All the parties, who have any interest in the mortgaged premises, are before the Court. The ground upon which the Court below held that the other mortgagees were necessary parties to the proceeding was "that under the mortgage the mortgagees mentioned in the mortgage, held as well for themselves, as trustees for other parties who should furnish goods and be secured by the mortgage, and that a trust could not be assigned."

To this proposition there are two answers:

*a.* That by the mortgage itself, it appears that the persons mentioned in the mortgage, were only to hold as trustees, until such time as goods, to the amount mentioned in the mortgage, should be furnished the company, either by those mentioned, or others, and that when they were so furnished, and the parties furnishing had received their certificates, they stood in the same relation as though they were expressly mentioned in the mortgage.

*b.* There is nothing in the papers to show that any one, other than those mentioned in the mortgage, furnished any goods or money to the company, or were entitled to come in under the mortgage, and it follows that the trust was not created.

Allowing that the trust was created and perfected, it was not a personal trust, and was capable of being assigned, and the Shasta River Canal Co. taking with notice, would be bound to fulfill the trust. (Adams' Eq. 149.)

*J. Berry*, for Respondent.

There is a defect of parties plaintiff. It is admitted on the part of the Appellant in this cause, that the debt secured by the mortgage sought to be foreclosed, is not joint, but a number of separate, distinct, debts; or a single security to a number of persons, severally. Then, so far as the security extends, all these separate interests are united, and the very case provided for, by Section 14, Pr. Act, is presented.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

There was a demurrer to the bill of the plaintiff in this case, for, among other causes, a defect of proper parties, and the Court sustained it on this ground.

To determine the correctness of this judgment, which involves the subject of appeal here, it will be necessary to examine the frame of the bill. The bill charges that the defendant, the Yreka Water Company—a corporation under the general Act—in May, 1855, executed a certain mortgage, which is fully set out. The mortgage is executed to a large number of persons—Livingston & Co. among them—as parties of the second part, and one S. S. Brooks, of the third part. It provides, that the parties *of the first and third part*, in consideration of sixty-four thousand dollars, paid by the parties of the second part, sell, etc. to the latter, all their right, title, etc. to a certain ditch—defeasible, on the payment by the parties of the first and third parts, of this sum, with three per cent. per month interest; the parties of the first part expressly covenant to pay this sum. The mortgagees covenant next, that they will make no claim or demand " for any amount greater than what may be actually due and owing on these presents;" and that they will make no personal claim for any amount whatever on the party of the third part, Brooks. The deed then proceeds: " and it is expressly understood and agreed by all the parties to these presents, that these presents are made, executed, and delivered, and are to be held by the party of the second part, for themselves and others, who may or shall join with them, in furnishing and advancing, selling and delivering, to the party of the third part, goods, chattels, or cash, for or on account of the party of the first part, and who join with the party of the second part, in an agreement of this date between the same parties identically as the parties to these presents."

The bill goes on to aver, that Livingston & Co. in accordance with the terms of the mortgage, furnished two thousand dollars' worth of goods to the party of the first part, for and at the request of the party of the third part, and received two vouchers from the Treasurer of the company showing this fact—of which claims the plaintiff alleges he is the assignee, and that Templeton & Co. (successors to Templeton & Fox, also named as mortgagees,) furnished, in like manner, two thousand dollars' worth

of goods, evidenced in the same way, and in like manner assigned to the plaintiff.

The bill further states, that in April, 1857, an agreement was entered into between the corporation and the Shasta River Canal Company, another corporation—which agreement is also fully set out.  By the terms of it, the Yreka Water Company sell, lease, and grant, to the Shasta Company, all the right, title and interest, of the first company to the ditch, from date to 11th of Sept. 1857.  The instrument provides : "At which last mentioned time the aforesaid property, if not redeemed by the party of the first part, or by a redemption from the sale made thereof under a judgment against the said party of the first part, in favor of J. W. Russell & Co. on the 11th of March, A. D. 1857, by the Sheriff of Siskiyou County, shall be delivered to the purchaser at said sale ; and if the party of the first part shall be the assignee of said purchaser on the 11th day of September, A. D. 1857, then it is expressly agreed and understood, by and between the parties hereto, that the said party of the second part are to retain the possession and use of the above described property, with all the rights acquired by said assignment from said purchaser.

The said party of the second part, as a consideration for this conveyance, hereby covenant and agree, to hold the party of the first part harmless from a claim that William Kelsh has against the said party of the first part, for rents and profits arising from the above mentioned and described property, between the 11th day of March, A. D. 1857, and the 11th day of September, A. D. 1857.  To pay off and discharge as fast as the cash proceeds arising from said property, after the payment of current expenses, will enable them to do so : first, a judgment against the said party of the first part, in favor of Jonas Hobert ; secondly, the amount advanced (and unpaid) to pay the taxes on said property, and after the above named claims are paid off, to appropriate one-half of the net cash proceeds of said property, to pay six thousand dollars of a judgment in favor of Templeton & Fox, against E. J. Curtis and others ; and the other half, to pay a claim not exceeding three thousand dollars, of certain laborers heretofore employed by the party of the first part, said laborers, and the amounts due them respectively, to be designated by

the party of the first part; and a judgment of Joseph Hawkins v. A. V. Gillett. All, or any of the aforesaid payments, are to be made only as the party of the second part realizes the money, over and above current expenses of the property, exclusive of water scrip issued by the party of the first part, and taken in payment of water by the party of the second part, out of the use and possession of said property.

And the party of the second part agree and undertake to use their best endeavors to procure an assignment of the claims of various persons against the party of the first part, which said claims are mentioned and set forth in the schedule hereto annexed, to the party of the second part, for shares of the capital stock of the party of the second part, in the amount and proportions of stock set forth in said schedule; and if said party of the second part shall succeed in procuring said assignment of said claims, and become the owners thereof, and of the property first described herein, absolutely, then they will release and enter satisfaction of said claims assigned to them as aforesaid, on or after the 12th day of September, A. D. 1857, or as soon thereafter as said claims shall be assigned to the said party of the second part."

The bill proceeds to state that on the 12th September, 1857, in pursuance of this agreement, all the other mortgagees (except plaintiff and his assignors) entered into an agreement with the Shasta Co. and the other parties mentioned in the schedule before referred to, to assign to the company their several indebtedness against the Yreka Water Co. and to receive the stock of the Shasta Co. in lieu thereof; which contract was to take effect and become binding upon all the parties thereto, provided that persons holding or representing nine-tenths of the indebtedness mentioned in said schedule should agree to sign the said agreement; and that persons holding nine-tenths of said indebtedness did so sign said agreement; that the Shasta Co. now claim to be the owner of the property, rights, etc. of said Yreka Water Co.

The prayer of the bill is as follows:

" Wherefore plaintiff prays that said defendants, and all persons claiming under them or any of them, subsequent to the mortgage aforesaid, may be foreclosed of their estate and interest in or lien upon the said mortgaged premises, that a decree

may be made in due form for the sale of said premises in said mortgage mentioned by the Sheriff of said county, according to law and the practice of this Court, and the proceeds of said sale applied to the amount due the plaintiff, together with his costs and disbursements, and that he have execution for the balance, if any remaining unsatisfied thereafter; or that this honorable Court will, by its decree, sequestrate the franchise of the said defendants, and appoint a sequestrator to take charge of the said mortgaged premises and collect the tolls of the same, and after paying the current expenses, to retain enough money in his hands to satisfy plaintiff's demand, together with interest and costs, and then to deliver said mortgaged premises to the defendants and pay said money to the plaintiff, and for such other and further relief as the nature of the case may require, and to this honorable Court may seem just and proper, the premises being fully considered, and he, as in duty bound, will ever pray, etc."

From this analysis of the bill, it would seem that the plaintiff's assignors were mortgagees for the sums they subsequently advanced under the terms of the mortagage, to the same extent as if they were then present creditors. The transfer by the Yreka Co. of the property first mortgaged, to the Shasta Co. was subsequent in time, and, of course, subordinate, to the first mortgage. That company took the interest subject to this paramount charge. The Shasta Co. is made a party defendant—the other mortgagees, now stockholders in the latter company, are not. According to the bill, they have no longer any beneficial interest as mortgagees. They have changed their indebtedness from credits against the old company into stock in the new corporation; and have released, or agreed to release, their debts against the Yreka Co. on this consideration. It is not necessary to consider the question, whether, by force of this agreement and release, these stockholders could claim their lien on the property as against the plaintiff, or whether that lien has become extinguished in equity. The only question is, whether it was necessary to make these mortagees parties to this bill, in order to enable the plaintiff to enforce his lien.

The only ground upon which it can be urged that the other mortgagees should be made parties, is, that they were Trustees

15

for the plaintiff, or that they were jointly interested in the property mortgaged with the plaintiff. But this is not the construction which we place upon the instrument. Though several parties are provided for and secured by the mortgage, yet they were not jointly interested in the mortgage debts; but the debts were separate, and the mortgage may be regarded as a several security for the different creditors.

We do not see in this instrument anything to distinguish it from an ordinary mortgage, securing several separate debts, nor anything requiring of these mortgagees the execution of any trusts, so far as the plaintiff is concerned. It is the simple case, as we consider, of a separate mortgage for the benefit of the plaintiff, and may be enforced as if he were the only party interested, subject only to this: that, if others are interested in the property mortgaged, a Court of Equity, for a full adjustment of the equities and rights of the parties, will require them to be brought before the Court before ordering a sale or foreclosure. It is true, some authorities seem to hold that where several persons are interested as mortgagees one may foreclose without joining the rest. This was held—or, rather, permitted, for no opposition was made—in *Montgomerie* v. *The Marquis of Bath*, (3 Vesey, Jr. 560.) The same doctrine seems to be held in 17 Serg. & R. 400; *Darley* v. *Hayes*, and affirmed to be correct in Mohler's appeal, (5 Barr. 118.) But the weight of authority seems to be otherwise. Story's Eq. Pl. (Sec. 201,) thus states the rule:

"And it may be generally stated, that all persons who have the legal interest in the mortgage, as well as those who have the equitable interest therein, are necessary parties to the bill to foreclose. There can be no redemption or foreclosure unless all the persons entitled to the whole mortgage are before the Court. Thus, for example, a person entitled to a part only of the mortgage money cannot file a bill to foreclose the mortgage as to his own part of the money; but all the other persons in interest must be made parties. So, if the mortgage has been made to a Trustee in trust, all the *cestuis que trust*, (or beneficiaries,) should be made parties, as well as the Trustee to the bill to foreclose;" and many authorities are cited. (See, also, Sec. 207.)

But we think this case is not within the rule, for here the bill avers that these other creditors are no longer interested. They

have become stockholders of this new corporation, and the corporation is made a defendant, and charged to be in possession of the mortgaged property, subject to the incumbrance of the plaintiff.  It is true, it may appear that they, if they choose to assert it, have some claim, possibly, upon the ground that they were originally creditors of the Yreka Co. coupled with other equitable circumstances.  But, as yet, they do not set up or insist upon that claim; and upon the demurrer it is too éarly to consider the effect or validity of this claim.  *Prima facie,* it would seem from the averment, that they have no interest· in the mortgage property as *cestuis que trust* or mortgagees under the first deed—that their claim is extinguished—as by payment on this new contract or arrangement.

The Court below, on the return of the cause, will be put in possession of the merits of the case by the answer of the defendant, and the rights of all parties concerned can be fully protected by its action.

Judgment reversed and cause remanded for further proceedings, in pursuance of this opinion.