THE JUNCOS CENTRAL CO. *v.* RODRÍGUEZ.

APPEAL from the District Court of Humacao.

No. 428.—Decided April 29, 1910.

PLEADINGS—NATURE THEREOF—TITLE THEREOF—NATURE IN VIEW OF CONTENTS OF SAME.—The title under which an attorney heads his pleading is a matter of no importance whatever, because the nature or character thereof depends entirely upon its contents, and not upon its title.

RECONVENTION—COUNTERCOMPLAINT.—Where the pleader calls his plea a recon-
vention, as this term is not used in our Code of Civil Procedure, we would
regard it as a countercomplaint.

ID.—DIFFERENCE BETWEEN A COUNTERCOMPLAINT AND A RECONVENTION.—This
court, after considering the difference between a reconvention and a counter-
complaint, held that, even supposing that the district court erred in regard-
ing as a countercomplaint what the defendant called a reconvention, the
error is of no importance in this appeal.

STRIKING OUT PLEADINGS—ANSWER TO COUNTERCOMPLAINT—TIME WITHIN WHICH
SAME MUST BE FILED.—The Code of. Civil Procedure contains no provision
whatever fixing the time within which to file an. answer to a cross complaint,
although section 115 provides that it must be delivered upon the parties af-
fected thereby that they may demur or answer thereto as if to the original
complaint. It might possibly be held that by analogy the time within which
answer should be made to the cross complaint should be limited to ten days.

ID.—ANSWER TO A CROSS COMPLAINT FILED DURING TRIAL—FAILURE TO ENTER
DEFAULT.—The default of the plaintiff, because of his failure to answer
the cross complaint in due time, not having been entered, the district court
should not have stricken out the answer, because the general rule is that
pleas may be filed at any time until default is taken.

ID.—FILING PLEAS AFTER EXPIRATION OF TIME THEREFOR—DISCRETION OF THE
COURT.—It is discretionary with the trial court to permit the filing of pleas
after the expiration of the time provided therefor upon a showing of suffi-
cient reason therefor, and although, as a general rule, it is presumed that
such discretionary powers have been duly exercised, nevertheless, in this
particular case, as the answer to the cross complaint was improperly stricken
out, the court should have allowed its reinstatement.

DEMURRER TO COMPLAINT—TIME WITHIN WHICH SAME MUST BE FILED.—In ac-
cordance with section 109 of the Code of Civil Procedure, a demurrer to
the complaint, on the ground that it does not state facts sufficient to con-
stitute a cause of action, may be filed at any time.

JUDGMENT IN DEFAULT—ENTRY OF DEFAULT OF A CROSS DEFENDANT.—The pro-
visions of section 194 of the Code of Civil Procedure, which require the
entry of the default of a defendant before judgment in default can be ren-
dered against him, are·not applicable to a defendant in a cross complaint
who has failed to answer the cross complaint.

JUDGMENT IN DEFAULT—INCLUSION THEREOF IN JUDGMENT UPON THE MERITS OF
THE CASE—JUDICIAL PROCEEDINGS.—The rules of procedure must be strictly
followed, and, therefore, it is error for a court to include a judgment, which
it has been sought to obtain by default, in a final judgment rendered on the
merits of the case.

CORPORATIONS—LIABILITY FOR DEBTS OF FORMER OWNERS—EVIDENCE OF LEGAL
RELATION.—It not having been proved by the evidence that any legal con-
nection or relation existed between the plaintiff corporation and the former
owners and organizers thereof, no judgment can be rendered against the
plaintiff corporation for the debts and acts which it has not assumed and for
which it is not shown that it is responsible.

JURISDICTION—ERRONEOUS PROCEEDINGS.—Want of jurisdiction should not be con-- founded with improper procedure, because if the court has jurisdiction of the parties and of the subject matter, it has jurisdiction to determine the ques-- tions raised for its consideration.

The facts are stated in the opinion.

*Mr. Arturo Aponte, Jr.,* for appellant.

*Messrs. Vias Ochoteco and Ferrer* for respondent.

MR. JUSTICE MacLEARY delivered the opinion of the court.

This case is submitted, by stipulation of counsel, on the printed briefs of both parties. The plaintiff, which is a corporation engaged in the manufacture of sugar, brought suit against the defendant, an agriculturist, in the District Court of Humacao, to recover eight hundred and ninety dollars and seventy-two cents ($890.72), for the rents of a farm leased by the plaintiff to the defendant, and for two hundred and eighty-nine (289) empty sacks, suitable for sugar, sold to him.

The defendant answered the complaint and set out as a counterclaim that there was a contract of sublease between the plaintiff and the defendant of a piece of land described; and that afterwards, by virtue of an agreement made between the parties, the Resach Bros., made a sublease to him of another hundred acres of the tract of land previously described, whereby the defendant was to have all the benefits of a contract existing between the said Resach Bros. and the Juncos Central Co.; and that as substantial conditions of these con-- tracts the defendant, Rodríguez, was obligated to pay, as a rent, to the Juncos Central Co. twelve mills ($0.012), for each hundred pounds (quintal) of cane raised upon the lands so leased; and the central company, on its part, was obligated to render a complete and detailed account of the number of quintals of cane delivered on each grinding day; which the said company had not done in proper form, but had done in a defective manner, notwithstanding it had been required so to do by the defendant, Rodríguez.

Further, that on November 21, 1904, Messrs. Roig, Gay & Co., a joint stock company, then the sole owners of the Juncos

Central Co., entered into a private agreement with Juan Rodríguez Márquez in regard to the grinding of cane, which contained the following clause:

"Messrs. Roig, Gay & Co., a joint stock company, in behalf of themselves and their assigns, bind themselves to grind in their Juncos Central all the canes raised on at least 50 acres, to be delivered by Mr. Juan Rodríguez Márquez, which canes shall be paid for by them at the rate of five per cent (5%) of their net weight—that is to say, five pounds of sugar for every hundred pounds of canes—which they shall deliver in centrifugal sugar, grade used in the States, polarizing not less than 96 degrees, said central to be given the preference in the purchase of the same at equal prices."

That the defendant, Juan Rodríguez Márquez, had planted, for the grinding seasons of 1905, 1906 and 1907, more than 50 acres of canes, in compliance with the agreement, and had always cut, to be ground in said central, the amount of canes apportioned to him by the management of the central, hauling them to the place designated, and notwithstanding the fact that said Rodríguez Márquez had fulfilled all the obligations contracted by him in his private contract in regard to the grinding of canes, the Juncos Central Co., or their assignors, Mesrs. Roig, Gay & Co., for causes beyond the control of the tenant, Juan Rodríguez Márquez, and owing to circumstances solely imputable to lack of foresight or to the negligence of Messrs. Roig, Gay & Co., stopped the said Rodríguez Márquez from cutting the canes on September 20, 1906, the grinding season having begun in a regular manner in the previous month of August—that is to say, he was stopped at an improper time—preventing the said Rodríguez Márquez from grinding 23 acres of seed canes which were not cut, thereby causing said tenant a real loss of two thousand two hundred and ten dollars and fifty cents ($2,210.50), due not only to the shrinkage in the output of the said 23 acres of canes, but also on account of the damages done to the cane stumps, and from the increased expenditure required in the cultivation of said canes.

That likewise, during the grinding season of the current year, the Juncos Central Co., or their legal representatives, have failed to haul or transport with proper diligence the canes cut by the tenant, Juan Rodríguez Márquez, by orders of said representatives or managers, the tenant suffering thereby great damages which may reasonably be estimated at the sum of five hundred dollars ($500).

That the total of the damages suffered by Juan Rodríguez Márquez, leaving aside the moral damages and exemplary damages which are incalculable, amount to two thousand seven hundred and ten dollars and fifty cents ($2,710.50), which sum the Juncos Central Co., the assignee of Messrs. Roig, Gay & Co., refuses to pay, although payment has been required of the same.

And based on these allegations in his pleadings, the defendant, Rodríguez Márquez, made the three following prayers to the court:

(a) That the Juncos Central Co. should render to said Juan Rodríguez Márquez, within a reasonable time, a faithful and correct account of the number of quintals of canes ground, day by day, in the factory of said corporation, and coming exclusively from the lands subleased to said Rodríguez Márquez.

(b) That the Juncos Central Co. be sentenced to pay to Juan Rodríguez Márquez, as damages, the amount claimed of two thousand seven hundred and ten dollars and fifty cents ($2,710.50) ; and

(c) That the costs herein be adjudged against said corporation.

Thus it may be summarized: The defendant claims in his answer, in the first place, that the plaintiff and defendant had a rental contract by which the latter was to pay to the former as rents at the rate of 12 mills per quintal for all the cane produced; and in the second place, that there existed between the parties a contract for grinding cane, with which the plaintiff had not complied, thereby causing actual dam-

ages to the defendant in the sum of two thousand seven hundred and ten dollars and fifty cents ($2,710.50).

The trial court, on the trial, rendered the following judgment, to wit:

"On the 21st and 22d days of December, 1908, the days previously set, the hearing of this action took place in which A. Aponte Jr., and Juan Vías appeared as counsel for plaintiff and defendant, respectively, and both parties announcing themselves to be ready for trial, the court, after reading the writings of the parties, the evidence introduced and argument of counsel, reserved its decision. To-day, the 30th of March, 1909, the court is of the opinion that the law and the facts are in favor of the plaintiff, the Juncos. Central Co., and, therefore, decrees that the latter recover from the defendant, Juan Rodríguez Márquez, the sum of eight hundred and forty-seven dollars and fifty-one cents, as claimed in the amended complaint, with costs assessed at ———— against the defendant, and that an order of attachment be issued on his estate for the execution of this judgment; and in regard to the second cross complaint, the court is of the opinion that the law and the facts are in favor of the defendant, Juan Rodríguez Márquez, and, therefore, decrees that the latter recover from the plaintiff, the Juncos Central Co., the sum of two thousand seven hundred and ten dollars and fifty cents, and that an order of execution be issued on the estate of said plaintiff corporation for the execution of this judgment. Given under my signature to-day the thirtieth day of March nineteen hundred and eight."

From that part of the judgment, which awards to the plaintiff $847.51 against the defendant, no appeal is taken, and it is not in controversy here. It is only with the second part of the judgment, awarding to the defendant, $2,710.50, that we have to deal. From this the plaintiff takes this appeal and it is now under our consideration.

As grounds of appeal the appellant sets out seven alleged errors said to have been incurred on the part of the trial court, and enumerated as follows:

1. The District Court of Humacao should not have considered as a cross complaint (*contra-demanda*) what the defendant himself called a counterclaim (*reconvención*), which writ-

ing did not set forth a cause of action against the plaintiff central.

2. The District Court of Humacao ought not to have eliminated the writing of the plaintiff central denying the answer of the defendant.

3. Even granting that the elimination of the answer to the alleged cross complaint was proper, the court should not have refused to the plaintiff central the filing of the same by permission of the court, since the petition was made in proper manner, to wit, by a written application, affidavit of merits, and copy of the proposed or intended answer, besides the reasons, excuses or inadvertencies which were alleged, which showed that their claims were well founded.

4. It is alleged that the court below ought never to have decided that it was not necessary to previously enter the default of the defendant in order to render a judgment by default, a thing which it did on the consideration of the cross complaint in so far as the central was concerned.

5. The District Court of Humacao should not have included a judgment, sought to be taken by default, in the final judgment on the merits of the action.

6. The court below could not enter, and ought not to have entered, a judgment against the plaintiff on the merits of the cross complaint because it did not set forth a cause of action.

7. Lastly, it is firmly believed that the District Court of Humacao had no jurisdiction to enter that part of the judgmen on the cross complaint in favor of the defendant, adjudging the plaintiff central to make the payment of two thousand seven hundred and ten dollars and fifty cents ($2,710.50).

Let us take up these supposed errors in the order presented by the appellant in his assignment.

As to the first proposition: It does not matter much what the pleader calls his pleading in the heading thereof; we must determine its classification by its contents and give it effect accordingly. (*McDougal* v. *Hulet,* 132 Cal., 154; *Hecker* v. *Dalton,* 75 Cal., 156; *Gregory* v. *Bovier,* 77 Cal., 124.)

But even if the pleader calls his plea a reconvention, as this term is not used in our Code of Civil Procedure, we would regard it as a countercomplaint. The two classes of pleadings are not very different in any way.

A countercomplaint is thus defined:

"A claim presented by a defendant in opposition to, or deduction from, the claim of the plaintiff. A series of set-off or recoupment introduced by the Codes of Civil Procedure in several of the States, of a broad and liberal character. A counterclaim must be one 'existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action: (1) A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of action; (2) In an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action.'" (Code Proc. N. Y., section 150.)

"The term 'counterclaim,' of itself, imports a claim opposed to, or which qualifies, or at least in some degree affects the plaintiff's cause of action." (35 Wis., 626.)

"A counterclaim is an opposition claim, or demand of something due; a demand of something which of right belongs to the defendant, in opposition to the right of the plaintiff." (8 How. Pr., 122.)

"A counterclaim is that which might have arisen out of, or could have had some connection with, the original transaction, in view of the parties, and which, at the time the contract was made, they could have intended, might, in some event, give one party a claim against the other for compliance or noncompliance with its provisions." (7 Ind., 523, 524; Black's Law Dictionary, p. 284.)

Reconvention is thus defined:

"In the civil law. An action by a defendant against a plaintiff in a former action; a cross bill or litigation. The term is used in practice in the States of Louisiana and Texas, derived from the *reconventio* of the civil law. Reconvention is not identical with set-off, but more extensive." (See 6 Tex., 414; 5 Tex., 501, 504; Black's Law Dictionary, p. 1003.)

Then for the purpose of this appeal we must pass over the first assignment of error as immaterial.

The second assignment presents a matter which was clearly an error on the part of the trial court. It will be found on an examination of the transcript that the trial in this case took place on the 21st and 22d days of December, 1908; and it appears that the answer made by the plaintiff to the cross complaint of the defendant was filed on the first day of the trial. A motion was at once made by the defendant to strike this answer from the record, which was granted by the court on the ground that it was not filed in time, and that no extension of the period allowed for filing it had been granted to the plaintiff, and that there was no written stipulation between the parties governing the matter. In our statutes the only mention made of the time allowed for filing a pleading is found in paragraph 3 of section 69 of the Code of Civil Procedure, wherein the time allowed for filing an answer to a complaint, where all the parties reside within the district, is fixed at 10 days after service of the summons. No period is fixed for answering a cross complaint; but it is provided, in section 115, that it must be served upon the parties affected thereby, and that they may demur or answer thereto as if to the original complaint. It might possibly be held that, by analogy, the time within which answer should be made to the cross complaint should be limited to 10 days. But even granting such to be the case, what should the trial court have done in the matter here presented? We may find an answer to this question in the luminous opinion of Justice Morris of the Court of Appeals of the District of Columbia in a garnishment case, on appeal from the Supreme Court of that District. The learned Justice says:

"The invariable practice has been that, notwithstanding the lapse of time limited by the rules of court, pleas may be filed and should be received at any time until default taken. And this practice, which is plainly in no way inconsistent with the purposes of justice, we regard so well established that citation of authorities in support of it may be regarded as wholly unnecessary. But reference may be had to 1 Tidd's Practice, 566; *King* v. *Hicks*, 32 Md., 460; *Crabtree* v.

*Green,* 36 Ill., 279; *Bowers* v. *Dickerson,* 18 Cal., 420; *Dole* v. *Young,* 11 Johns. (N. Y.), 90; *Boyd* v. *Canal Co.,* 17 Md., 195.'' (*Banville* v. *Sullivan,* 11 Ct. App., D. C., 31.)

Cases apparently at variance with this doctrine may be found in a note to 31 Cyc., 597; but the correct rule appears to us to be stated by the Court of Appeals of the District of Columbia in the Banville-Sullivan case. It is certainly rational and merits our approbation. Then the trial court should not have stricken out the answer made by the plaintiff to the cross complaint of the defendant.

In regard to the third assignment of error, it seems to be stated very broadly. Granting that the answer made by the plaintiff to the cross complaint had been properly stricken out, then the reinstatement of it became a matter within the sound discretion of the court. It is true as stated by the respondent, that the discretion of the trial court is generally held, on appeal, to have been well exercised, and the authorities cited on this point have great force. (*Wolff & Co.* v. *Canadian Pacific,* 89 Cal., 332; *Buel* v. *Emerich,* 85 Cal., 116; *Dougherty* v. *Nevada Bank,* 68 Cal., 275; *Bailey* v. *Taaffe,* 29 Cal., 424.)

The real reason why the reinstatement should have been made was because the answer should not have been stricken out in the first place. Though we may not have been willing to exercise judicial discretion as the trial court did, in this particular, we hestitate to find an abuse of that discretion, without reference to the attending circumstances. Besides, the exception made by the plaintiff that the counterclaim of the defendant did not set forth facts sufficient to constitute a cause of action could be presented at any time, according to section 109 of the Code of Civil Procedure. (*Abbe* v. *Marr,* 14 Cal., 212.) Then, on the whole, we must consider the ruling of the trial court on this point as erroneous.

In regard to the fourth assignment of error presented, we must certainly consider that it is well taken. It was clearly

necessary to follow the Code strictly in rendering a judgment by default against the plaintiff on the cross complaint. No judgment by default can be taken against a defendant, unless the same has been previously noted by the secretary as prescribed by section 194. That section, in proceedings for default, must be strictly followed. But the section cited applies only to a default made by the defendant and not to such as are made by a plaintiff in answering a cross complaint. Then for this error the action of the court complained of in the fourth assignment of error must be disapproved.

So the fifth assignment announces a correct proposition when it says that the trial court should not have included a default judgment against the plaintiff in the final judgment on the merits. Judicial proceedings should be conducted in a regular and orderly manner and the Code of Procedure carefully followed and fulfilled.

In considering the sixth assignment of error, we must examine the allegation of the cross complaint to ascertain the basis of the demand for the $2,710.50. It arises out of a contract alleged to have been made with Roig, Gay & Co., and not with the plaintiff in this suit. To our mind no sufficient allegation is set forth to connect the Juncos Central Co. with this claim; nor does any obligation appear on the part of the said corporation to pay the same. The mere fact that Roig and Gay are connected with the said central company, or even that they organized the same and became officers thereof, does not render the newly organized company liable for their debts. This seems to us a fundamental error requiring a reversal of the judgment.

In regard to the seventh and last assignment of error, we must say that we do not see any want of jurisdiction in the trial court to render such a judgment, had the question been properly presented by the pleadings and maintained by the proofs. The court certainly had jurisdiction of the parties and the subject matter of the litigation. If the appellant, by asserting a want of jurisdiction in the court to render a

judgment by default on the cross complaint, meant to say that the statute did not authorize such action on the part of the trial court, then, as we have said in treating of the fourth assignment of error, he may be held to have announced a correct proposition. But we do not think that want of jurisdiction should be confounded with improper procedure. Hence we must hold that having jurisdiction of the parties and the subject matter, the trial court should have proceeded to determine the questions presented for its consideration, following the statutes prescribing the proper methods of reaching correct conclusions.

For the errors indicated the judgment should be reversed and the cause remanded to the District Court of Humacao, to be conducted to a conclusion in accordance with this opinion.

*Reversed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice Figueras did not take part in the decision of this case.